PATRICK J. McPHILLIPS, as Administrator of the Estate of John B. McPhillips, deceased, Respondent, *against* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

(Decided March 14th, 1884.)

At the trial of an action against a railroad company for damages for negligently causing the death of plaintiff's intestate, he having been struck by one of defendant's trains while crossing the track, it appeared from the evidence on behalf of plaintiff that the deceased, having crossed the track, turned back to re-cross it, when the train was in plain view, distant about 400 feet, and he must have seen it had he looked; that either he caught his foot in or near the rails or he stumbled, and fell, was struck

McPhillips *v.* New York, New Haven &c. R. Co.

by the engine and killed.  *Held,* that such attempt to re-cross was negligence on his part, whether he could or could not have crossed in safety had he not been delayed by catching his foot or stumbling; and that a motion to dismiss the complaint on the ground of his contributory negligence should have been granted.

Evidence that a guard rail at the crossing was 3¼ inches from the track rail, while 2¼ inches would amply accommodate the passage of defendant's engines, does not establish negligent construction rendering defendant liable for such damages, in the absence of proof of a different condition at other crossings, and of proof as to whether the deceased caught his foot between the guard and main rail.

Evidence on the part of plaintiff that flagmen were kept by defendant at other crossings than the one where the accident occurred is not admissible in such an action.

APPEAL from a judgment of this court entered on the verdict of a jury and from an order denying a motion for a new trial.

On May 2d, 1881, about noon, the plaintiff's intestate, a bright boy twelve years old, with two companions, crossed the double tracks of the New York and Harlem Railroad used by the defendant, from the east to the west side.  The point of crossing was near the end of One Hundred and Sixty-ninth Street, which is not open west of the track. The crossing was partially planked and provided with guard rails, and had been long used by wagons and pedestrians. When the three boys were west of the tracks, intestate saw his younger brothers following and on or near the east line of rails.  He re-crossed to the east to drive them back. Having done so he started on a run westward to rejoin his companions.  The defendant's train was then in plain sight, about four hundred feet away, running twenty-five miles an hour.  Evidence was given tending to show that intestate's foot was caught in or near the west rail of the east track, but how does not appear.  He could not free his foot, and was killed by the train.  The plaintiff having shown the absence of a flagman, was allowed under exception to show the presence of a flagman at Morrisania and Tremont crossings.

At the close of plaintiff's proof, and of the evidence,

motions were made to dismiss the complaint and denied, the defendant excepting. There was no evidence of any negligence in the management of the train. The jury rendered a verdict for the plaintiff, and specially found the injury caused by improper or defective construction or condition of the railroad tracks and the crossing. A motion by defendant for a new trial was denied, and judgment for plaintiff was entered on the verdict. From the judgment and the order denying the motion for a new trial defendant appealed.

*Martin J. Keogh*, for appellant.

*D. M. Porter*, for respondent.

BEACH, J.—[After stating the facts as above.]—For at least two reasons, I am of opinion the motion to dismiss the complaint should have been granted. It appears from plaintiff's case that the train was in plain view, and distant about four hundred feet, when the deceased turned to re-cross the track. He was then nearly if not quite across the east line of rails, and a step at most would have placed him in safety. Instead of taking it, he turns and runs quickly back, directly in front of an advancing train he must have seen. This was negligence. Whether or not he could have crossed in safety had he not been delayed by catching his foot or stumbling, cannot affect this conclusion. His negligent act was the attempt to cross, with an advancing train but a short distance away, and in plain sight. From the evidence, he must have seen it, but if not, he failed in his duty to look ( *Wendell* v. *New York Central &c. R. R. Co.*, 91 N. Y. 420). In that case the court say : " Under the circumstances we think he was negligent either in going upon the track without looking to see whether a train was coming or not, or if he did look and see it, in doing so while it was in such dangerous proximity. The exercise of active vigilance under such circumstances was a duty which the law imposes upon every person who at-

tempts to cross a railroad track. He should not be per-
mitted to make close calculations to determine whether he
can safely pass in front of an approaching body, and when
the experiment has failed, charge the consequences of his
mistake upon the owner of the colliding vehicle or property."

The fact of contributory negligence in this class of cases
must be decided upon the evidence relating to the time when
the action of the party charged therewith is first taken and
not upon what may happen after the attempt is initiated.
It clearly appears, the intestate started to cross the track
with the advancing train in plain view. Plaintiff's witness
Aiken says that when he turned to cross over, the train
was at the third or fourth telegraph pole, at the most less
than four hundred feet distant. The changing statements
of this witness make clear comprehension of his testimony
extremely difficult. On his cross-examination he says, the
train was at about the fourth telegraph pole when intestate
started to cross from west to east; again says he don't
remember where the train then was, and directly after, that
the train was then coming from Morrisania station and
believes intestate looked down towards it before he crossed.
But when he turned to cross from east to west, the witness
repeats the fact of the cars being in view. Another of
plaintiff's witnesses, McPhilips, a younger brother of de-
ceased, and who remained east of the railway, thus testifies:
"Just as soon as I heard the whistle blow I ran over and got
on the fence, to see the train pass, and my brother Johnny
pushed my other two brothers off the track, and went to
run back and he caught his foot in the track and he tried
to get his foot up and he couldn't do it;" and again: "After
the train whistled John stood there and pushed away the
boys and the train was coming up all the time. I saw the
train distinctly. He then turned around to run back."
This witness says the train was in sight when his brother
started from west to east. It should be added that trains
are in full view from the crossing at Morrisania station
eleven hundred and seventy-five feet away. This is sub-
stantially the evidence of the only witnesses of the acci-

dent sworn on plaintiff's behalf. The conclusion is irre-
sistible of the intestate having started to re-cross from east
to west in front of an advancing train, about three hundred
and eighty-five feet away. No sane minds can differ upon
the entire absence of proof either direct or circumstantially
inferable showing in any degree the absence of negligence
at the inception of the intestate's attempt to cross. Whether
or not he afterwards caught his foot between rails unskill-
fully laid, or stumbled, and fell, makes no difference.

The plaintiff claims the negligent construction, because
a guard rail at crossing was three and one quarter inches
from the track rail instead of two and one quarter inches.
And this is based upon a theory advanced by two expert
witnesses, that the lesser distance would amply accommo-
date the passage of defendant's engines. This contention I
imagine is founded upon the case of *Payne* v. *The Troy
& Boston R. R. Co.* (83 N. Y. 572). Its weakness here con-
sists in the absence of any proof that three and one quarter
inches denotes negligent construction, from a different con-
dition at other crossings on defendant's railway or on other
railways. The fact of engine wheels requiring but two and
one quarter inches of space is not the test of negligent
arrangement. The question is whether or not the rail was
laid with reasonable care for the passage of the public over
the crossing. Upon this point the plaintiff's case is barren
of proof. It does appear that intestate caught his foot in
the rail or track, but whether between the guard and main
rail, or in some other way is very doubtful. Argumenta-
tively it is difficult to understand how the foot of a boy
twelve years old could be caught in an opening of three
and one quarter or one half inches, when crossing at right
angles.

For these reasons, without discussing the questions of the
crossing being a highway, or the defendant's legal position
from the roadway being the property of another corpora-
tion, I am of opinion the learned judge at trial should have
granted the motion to dismiss the complaint.

There is also one exception well taken. The plaintiff's

counsel asked a witness if a flagman was kept at this cross-ing, and then if one was kept above. To the latter question objection was made, overruled and exception taken. The witness answered: "They kept one above and one below. They kept one at Tremont crossing and at Morrisania crossing but here they have none at 169th Street." This subject was wholly irrelevant and the fact proven incompe-tent (*Beiseigel* v. *New York Central R. R. Co.*, 40 N. Y. 9). It would have influenced the jury upon the point of defend-ant's negligence, and possibly the damages awarded. It is true no negligence in defendant's management of the train was shown, and the jury found the injury was caused by improper and defective construction. But the court should be correct in its ruling in these cases, upon the admission of evidence, which must affect the minds of a jury, although a special finding may render it apparently harmless. The effect produced may bring injustice by an increased verdict.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide event.

LARREMORE and J. F. DALY, JJ. concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.