Payne v. C. & A. R. R. Co.

PAYNE, *by Next Friend,* v. CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

In Banc, December 23, 1896.

1. **Railroad:** PUBLIC CROSSING: DUTY OF TRAVELER TO LOOK AND LISTEN: CONTRIBUTORY NEGLIGENCE. A person about to cross a railroad track at a public crossing must recognize the danger and make use of his sense of hearing and of sight to ascertain, before attempting to cross, whether a train is in dangerous proximity, and if. he neglects to do so and ventures blindly and carelessly upon the track without any effort to ascertain whether a train is approaching, it must be at his own risk; and such conduct will of itself, constitute negligence.

2. ———: ———: ———: ———. Where, in an action for injuries alleged to have been received at a public crossing by a healthy, active boy, eleven years old, whose hearing and sight were good, all the witnesses near the crossing, and in a position to see, testified that the train inflicting the injuries was in full view for fifteen hundred feet and that they saw no one struck, although they were looking at the engine, and there was evidence that the whistle was sounded and the bell kept ringing until after the crossing was reached, and that the headlight was burning, and the plaintiff testified that he did not see or hear the train, although he was expecting it at the time, the judgment should be reversed upon the ground that the verdict was not supported by the evidence.

3. **Practice:** EVIDENCE IN CONTRADICTION OF PHYSICAL FACTS. The direct testimony of a party which is contradictory of, and in opposition to, conceded and undisputed physical facts should be disregarded by both courts and juries.

4. **Railroad:** PUBLIC CROSSING: DUTY TO LOOK AND LISTEN: CONTRIBUTORY NEGLIGENCE: INFANT. A healthy, active boy, eleven years old, possessed of good mind, sight, and hearing, who had attended school several sessions, and lived near a railroad crossing and was familiar with it and knew its dangers, is guilty of contributory negligence in attempting to pass over the crossing in front of a train approaching it at a high rate of speed.

5. ———: ———: CONTRIBUTORY NEGLIGENCE: ORDINANCE: UNLAWFUL RATE OF SPEED.   Where, in an action for personal injuries· received at a crossing in a city, it is clearly shown by the evidence that the contributory negligence of the plaintiff was the immediate cause of the accident, he can not recover, notwithstanding the defendant was, at the time, running its train at a greater rate of speed than allowed by ordinance.

6. ———: ———: PERSONAL INJURY:   CONTRIBUTORY NEGLIGENCE. Where, in an action for personal injuries alleged to have been caused by being struck by an engine at a public crossing, there was no evidence that plaintiff was so struck, but evidence to the contrary and that he grabbed at the train as it passed and was jerked under it, that he stated immediately after the injury that he was holding his hand out to the train when it ran over him, that he did not deny having made the statement and only testified himself that the train ran over him, it will be held to have been admitted that he was not struck on the crossing, but was injured after he had crossed over it, by heedlessly attempting to catch hold of the cars as they passed, and a judgment in his favor will be reversed and judgment entered for defendant.

7. **Practice:** EVIDENCE: ADMISSIONS.   Where a party does not attempt to deny the truth of statements made by witnesses against him, such statements will be taken to be true, the same as though admitted in terms.

*Appeal from Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED.

·*George Robertson* for appellant.

(1) There is no allegation in the petition or reply that plaintiff is not responsible, and before plaintiff is entitled to have that question passed upon it should be pleaded.   Want of capacity must be pleaded. Pom. Code Rem., sec. 711.   (2) The court should have instructed a verdict for the defendant either at the close of plaintiff's case or at the close of all of the evidence.   Putting the construction claimed for it by plaintiff upon his own evidence it is conclusively proven that he went upon a railroad track in front of a plainly and rapidly approaching engine, knowing

the danger to be apprehended from his act. *Harlan v. Railroad*, 64 Mo. 480; *Harlan v. Railroad*, 65 Mo. 22; *Beusching v. Gaslight Co.*, 73 Mo. 219; *Boyd v. Railroad*, 105 Mo. 371; *Karle v. Railroad*, 55 Mo. 476; *Maher v. Railroad*, 64 Mo. 267; *Zimmerman v. Railroad*, 71 Mo. 477; *Yarnall v. Railroad*, 75 Mo. 583; *Guenther v. Railroad*, 108 Mo. 18; *Prewitt v. Eddy*, 115 Mo. 283; *Hayden v. Railroad*, 124 Mo. 566; *Kelsey v. Railroad*, 129 Mo. 362. (3) Although the rate of speed was negligence *per se*, the negligence of plaintiff contributed to the injury, and there was no evidence that defendant's employees could have discovered plaintiff's danger in time to have avoided the injury. *Prewitt v. Eddy*, 115 Mo. 283; *Sullivan v. Railroad*, 117 Mo. 214; Webb's Pollock on Torts, 570. (4) The second instruction for the plaintiff is erroneous because of the use of the word "round" before "compensation." From it the jury get the idea that something more than real or just compensation is recoverable. The third instruction is erroneous for not confining defendant's liability for damages to the public crossing, as the evidence discloses that persons crossed over the railroad there at other points and all the points of crossing were called Russell street crossing. Instruction 4 is also erroneous, as under it plaintiff might have walked into a running train of cars in his effort to get over the crossing and yet be entitled to recover. Number 6 is erroneous. The jury may have believed that plaintiff was aiming to take hold of the moving train or to get upon it, yet under this instruction defendant would be liable if the jury may further have thought had the train been running at a rate of speed of six miles an hour or less the accident would not have happened. (5) Number eight given for plaintiff is error. The jury is told that plaintiff is expected to use such care and prudence as might be reasonably expected from a boy of his age and

capacity. This is not the rule. That care is required of a child which its capacity enables it to use. Beach on Contrib. Neg., secs. 117–136; *Railroad v. Mc Whirten*, 77 Texas, 356; *Railroad v. Young*, 81 Ga. 397; *Railroad v. Gladman*, 15 Wall. 401; *Payne v. Railroad*, 129 Mo. 416. This instruction is in conflict with defendant's number 6. (6) Number nine is error, as submitting an issue not made by the pleadings and further for charging the defendant with negligence under a state of facts of which it or its servants may not have had notice. (7) The verdict is contrary to defendant's instructions number 6, 7, 9, and 11. The hypothetical facts of each were true and undisputed, and, being such, the defendant was entitled to a verdict. (8) Taking the whole testimony together and considering the age and capacity of plaintiff, he was guilty of such contributory negligence as to preclude a recovery. *Masser v. Railroad*, 68 Iowa, 602; *Ecliff v. Railroad*, 64 Mich. 196; *Messenger v. Dennie*, 137 Mass. 197; *Murray v. Railroad*, 93 N. C. 92; *Potter v. Railroad*, 92 N. C. 541; *Twist v. Railroad*, 39 Minn. 164; *Tucker v. Railroad*, 124 N. Y. 670; *Payne v. Railroad*, 129 Mo. 416. (9) The court erred in overruling defendant's objections to testimony.

*John S. Blackwell, J. D. Shewalter*, and *M. C. James* for respondent.

(1) Appellant's first point is without merit, force, or authority. Plaintiff's petition and reply, both before and after verdict, were and are sufficient. Besides he made no objection in the trial court, either on the first or second trials, and it is too late to object for the first time in this court on the second appeal and hearing. *Haynes v. Trenton*, 123 Mo. 326; *Gilson v. Railroad*, 76 Mo. 286; *Edmonson v. Philips*, 73 Mo. 62; *Crow v. Railroad*, 57 Mo. App. 135. (2) The authorities cited by appellant under the second point of his

brief have no application whatever to the facts of this case. They are all cases to recover damages for injuries received by adults who were, in most cases, trespassers upon the track. (3) Appellant's assumption that plaintiff was guilty of contributory negligence and can not recover, is not justified by the evidence nor the inferences therefrom. The case of *Sullivan v. Railroad*, 117 Mo. 214, is not only against defendant but unanswerable and conclusively in favor of plaintiff on many of the material and cardinal points and issues in this case. (4) No valid or reasonable objection can be made to any of plaintiff's instructions, and appellant's criticisms thereof under its points 4, 5, and 6 are without merit. (5) The cases of *Masser v. Railroad*, 68 Iowa, 602; *Railroad v. Young*, 81 Ga. 397; 64 Mich. 196; *Twist v. Railroad*, 39 Minn. 161; *Tucker v. Railroad*, 124 N. Y. 308; *Murray v. Railroad*, 93 N. C. 92; *Potter v. Railroad*, 92 N. C. 541; *Messenger v. Dennie*, 137 Mass. 197, are cited by appellant under its point 8. Upon an examination of these cases the court will find that not a single one of them is applicable to the facts, conditions, or surroundings of the case at bar. (6) A child is not negligent if he exercises that degree of care which, under like circumstances, would reasonably be expected of one of his years and capacity. Whether he used such care in a particular case is a question for the jury. Beach on Contrib. Neg., sec. 117; *Eswin v. Railroad*, 96 Mo. 290; *O'Flaherty v. Railroad*, 45 Mo. 70; *Plumley v. Birge*, 124 Mass. 57; *Meibus v. Dodge*, 38 Wis. 300; *Railroad v. Young*, 81 Ga. 397; *Schmitz v. Railroad*, 119 Mo. 256; *Spillane v. Railroad*, 111 Mo. 555; *Burger v. Railroad*, 112 Mo. 238; *Payne v. Railroad*, 129 Mo. 405; *Bluedorn v. Railroad*, 121 Mo. 268. (8) The question of contributory negligence must be considered in view of the age, understanding, and intelligence of plaintiff. It can not be said, as a matter

of law in all cases and under all circumstances, that a boy of eleven years of age and possessed of ordinary intelligence has or has not the judgment and discretion which would charge one of maturer years with contributory negligence.    Each case must be decided in respect to the particular child and the circumstances attending the particular injury.    *Payne v. Railroad*, 129 Mo. 405; Beach on Contrib. Neg., secs. 117, 136; *Ridenhour v. Railroad*, 102 Mo. 286.    (9) If it appear from the evidence that the traveler, in approaching the railroad track, did look or listen, or both, then it becomes a question for the jury to determine, considering the situation, the duty of the railroad company, and all the facts and circumstances in evidence, and in this case, the age, capacity, thoughtfulness, and discretion of plaintiff, whether the precautions taken were reasonable.    *Waller v. Railroad*, 120 Mo. 635; *Bluedorn v. Railroad*, 108 Mo. 439; *Petty v. Railroad*, 88 Mo. 306. (10) If the inferences to be drawn from the evidence are not certain or incontrovertible, the question of negligence can not be passed upon by the court.    *Gratiot v. Railroad*, 116 Mo. 466; *Tabler v. Railroad*, 93 Mo. 79; *Huhn v. Railroad*, 92 Mo. 440.    (11) What might appear to be reasonable to a boy of tender years might be most unreasonable to an adult person of more discretion, and it was for the jury to take such difference into consideration in determining the question of contributory negligence on the part of the plaintiff.    *Hemmingway v. Railroad*, 72 Wis. 42; *Wright v. Railroad*, 77 Mich. 123; *Barry v. Railroad*, 92 N. Y. 289; *Bryne v. Railroad*, 83 N. Y. 620; *Swoba v. Ward*, 40 Mich. 420.    (12) The question as to whether or not the unlawful rate of speed of the train was the direct and efficient cause of plaintiff's injuries, and the question as to whether the plaintiff did or did not, in attempting to cross said track at said crossing, exercise

that degree of care which, under like circumstances, would reasonably be expected of one of his age and capacity, were submitted to the jury under proper instructions, and the jury having found for the plaintiff, the defendant has no cause of complaint and the judgment ought to affirmed. *Burger v. Railroad*, 112 Mo. 249; *Eswin v. Railroad*, 96 Mo. 290; *Spillane v. Railroad*, 111 Mo. 555; *Schmitz v. Railroad*, 119 Mo. 256; *Payne v. Railroad*, 129 Mo. 405; *Railroad v. Boozer*, 70 Texas, 530; *Railroad v. Stout*, 17 Wall. 660; *Haycroft v. Railroad*, 64 N. Y. 336. (13) Defendant can not claim or take any advantage of conditions and situations brought about by its own culpable negligence and wrongdoing. *Sullivan v. Railroad*, 117 Mo. 214; Shearman and Redfield on Negligence, sec. 13; *Rine v. Railroad*, 88 Mo. 392; *Railroad v. McDonald*, 43 Md. 534; *Haas v. Railroad*, 41 Wis. 49; *Johnson v. Railroad*, 31 Minn. 283.

SHERWOOD, J.—The plaintiff, who is a negro boy, sues by next friend for injuries received by him as the result of being run over by a train of defendant's cars in the city of Higginsville, on the evening of the sixth of May, 1892, at about 8 o'clock.

At that date plaintiff was eleven years of age. The jury, after hearing the evidence, returned a verdict in favor of plaintiff for $8,000. At a previous trial he received a verdict for $6,000.

The city of Higginsville, in the county of Lafayette, was a city of the fourth class, and had an ordinance in force limiting the speed of railroad trains to a rate not exceeding six miles per hour. The defendant's railroad runs through the city from east to west in a southwesterly direction, crossing Russell street, the principal street of the town. Russell street runs through the principal part of the town, north and south; beginning on the north it runs up to the railroad, crossing

the right of way of the defendant, then turns slightly to the west and continues on to the south side of the town. Defendant's main track and side track are both crossed by Russell street, the main track being on the north side. There is no sidewalk on the west side of Russell street approaching this crossing. There is a sidewalk on the east side of Russell street, extending from the business part of the town, on the north side of the railroad, directly up to the defendant's right of way, then on defendant's right of way to the main track, and continues clear across to the south side of the right of way, and continuing on the east side of Russell street south. The defendant's depot is situated north of the main track, and about fifty feet east of Russell street, and on the north side of the depot building is a platform which continues west until it reaches this sidewalk on the east side of Russell street, where the platform and sidewalk join on a level. The first building north of the defendant's right of way, and on the west side of Russell street, is the Arcade Hotel, in front of which there is a veranda. The sidewalk in front of the hotel is on a level with the sidewalk running from the hotel north on the west side of Russell street. Defendant's roadbed, where it crosses Russell street, is about two and one half or three feet above the level of the sidewalk and street in front of the Arcade Hotel, and this roadbed is also some higher than that part of the street on the south side of the railroad. There is also a crossing over the railroad one block west of Russell street, and one block east of Russell street.

The railroad from Russell street crossing continues west on a straight line fifteen hundred feet, and about nine hundred feet west of this crossing, on the north side of defendant's right of way, is a mill; and about three hundred feet west of Russell street crossing there

begins a switch on the north side of the track, running to the mill, called the "Mill Track." There is no building on the north side of the railroad and on the west side of Russell street nearer to the track than the Arcade Hotel, and west from it there are no buildings until the mill is reached. Standing at a point in Russell street and on the sidewalk on the east side of the street, and back twenty or thirty feet north of the railroad, a train can be seen approaching from the west for a distance of fifteen hundred feet, and standing at any point on this sidewalk in Russell street, looking west until the view is shut off by the Arcade Hotel, a train may be seen approaching from the west five hundred yards. At the time of this accident there were no cars on the mill sidetrack nor on the sidetrack south of the main track. This sidetrack crossing Russell street is about six or eight feet south of the main track.

At about 8 o'clock on the evening of the sixth day of May, 1892, defendant's passenger train called the "Hummer" approached this crossing from the west at a rate of speed varying according to several witnesses from twenty to thirty-five miles per hour. The whistle was sounded for this crossing at the usual place; the bell rung and kept ringing as it approached the crossing and over the crossing, and continued ringing through the town, and the headlight of the engine was burning. According to several witnesses it was not yet dark, but was dusk or twilight, but a person could be seen and recognized for a considerable distance.

After this train had passed, the plaintiff, a negro boy eleven years of age, was found lying fifteen or eighteen feet east of the Russell street crossing, between the main track and the sidetrack of the defendant, with both of his legs cut off, which was supposed to have been done by the train. The engineer, Jones, and the fireman, Eikhurst, were each on their respec-

tive sides of the engine looking forward at the crossing; saw no one on the crossing and saw no one struck, and did not know that anyone was hurt by the train until they received information of it at Slater, the end of their run, where they examined their engine and found no signs of blood upon it.

W. S. Dornblaser, a witness on the part of the plaintiff, crossed the track at this crossing from the south to the north, and stopped about twelve feet north of the main track on the sidewalk and watched the train until it passed over Russell street crossing and saw it strike no one.

James Jackson, a witness on the part of the plaintiff, was standing east of the crossing, on the depot platform, about ten or twelve feet east of the sidewalk; heard the train whistle, and the ringing of the bell; saw it approach the crossing, cross over it, and saw no one on the crossing, nor saw the train strike anyone.

Floyd Smiley, a witness on the part of the plaintiff, was standing on the depot platform in front of the depot, saw the train approaching from the west, saw a boy, or some boys crossing over the track when the train was about two hundred or three hundred feet west of the crossing; continued to look at the engine and the train until it had gotten over the crossing and saw it strike no one.

Mrs. Carrie Ellis, a witness on the part of the defendant, walked from the north side on the sidewalk, on the east side of Russell street up near to the crossing; stopped within a few feet of the point where the sidewalk crossed over the main track and waited until the train passed; noticed two black boys pass her, but did not notice them after passing her. She watched the engine until it had passed entirely over the crossing, and saw it strike no one.

R. C. Mosby, a witness on the part of the defendant, was in front of the Arcade Hotel looking directly at the engine as it passed over the crossing; noticed the engine all the time it was going over the crossing; saw no one on the crossing, and saw it strike no one.

James Dornblaser was standing in front of the Arcade Hotel, saw the engine and train pass over the crossing; but saw no one on the crossing nor saw it strike any one; but just before the engine entered upon the crossing he saw a colored boy, who looked to be twelve or thirteen years old, approaching the crossing from the *south* side of the track, but the engine and the train passed between him and the boy and he saw him no more. When he first saw the boy the train had not yet come into view.

William Chinn, a witness on the part of the defendant, was seated in front of the Arcade Hotel, and noticed the train pass over the crossing; he looked under the cars and saw a boy on the south side of the train "*making motions and seemed like he was catching to the train or something.*"

John Bowman, a witness on the part of the defendant, approached the crossing from the south side of the sidewalk and seeing the train approaching from the west stopped and waited for it to pass over the crossing. While standing there he saw this boy, the plaintiff, make a grab for the banister of the steps of about the third car, and saw him jerked under the train. The boy at the time of grabbing for the train was on the east of Bowman on the sidewalk.

Of all of a great number of witnesses, both for the plaintiff and defendant, who saw the train pass over the crossing on that evening, no one saw the plaintiff struck on the crossing, and all of the witnesses say that no one was struck upon the crossing.

C. D. Taylor was attracted by the noise of the boy immediately after the passing of the train; went to the boy, found him lying outside, between the main track and the switch track of the crossing, i. e., on the south side of the main track.   William Rutherford was near the crossing when the train passed; was attracted by the noise of the boy; went to him and found him lying about twenty feet from the crossing, between the switch and main track.   Rutherford and Taylor reached the boy about the same time; both of them asked him what was the matter, and how he got hurt, and he said to Rutherford that he was putting out his hand or putting it on the train and it ran over him; to Taylor, that he was holding out his hand to the train, and that it ran over him.   They picked him up and placed him on the platform of the depot.

Dr. Webb, who treated the boy, asked him several times how he got hurt, and he always answered the same way and told him *"I don't know."*

The testimony of Claude Payne, the plaintiff, covers some ten pages; it is made up largely of questions and answers, and frequent repetitions of the same.   The substance of it may be stated in a small compass; it is to this effect:   Plaintiff (whose mother lived four blocks south of the crossing in question) on the evening heretofore stated, being sent by his mother to the postoffice, went north along Russell street until he came to the Russell street crossing; when he reached that point, he looked out for a train; looked up and down the tracks, and the reason he did this was because he was afraid of the train, that it would hurt him unless he watched out for it.   Seeing no train, he crossed the tracks, continued north to the postoffice, did his errand, and started back home returning on the same street.   When he reached the railroad crossing he again looked up and down the track because he thought

·it dangerous to cross there without doing so. First, he looked west, or down towards the mill, because he was expecting the "Hummer" to come, but he "did not hear no train," did not hear the whistle blown or the bell rung, nor did he see any train, nor see any headlight, though he knew what it was, and then when he got on the track and started across, the train ran over him. But this train, he says, he did not see either before or after he was struck, though he says it was the *"Hummer" that struck him.* What part of the train ran over him does not appear, and he does not state nor pretend that he was struck by the *engine* or *cowcatcher.* He testified also that he had on one occasion traveled on a train from Higginsville to Aulville, some five miles; had assisted his grandfather in various kinds of farm work. He also testified that he had attended school in Higginsville for some time, and in attending school he crossed the railroad track at the Russell street crossing.

Fannie Payne, the mother of the boy, testified that the boy was eleven years of age; that he was familiar with the crossing and the railroad track; that he lived on the south side of the railroad, and the schoolhouse which he attended was on the north side of the railroad; that he had attended school as often as three sessions, two or three months at a session, and had daily crossed over the track to and from the schoolhouse; that he had ridden upon the cars; that a part of the time the boy had lived in the country with his grandfather; and while in the country at his grandfather's he helped his grandfather cut brush, burn brush, drop corn, cover corn, cut weeds, feed horses and curry them, and that while there he made a hand at work. She further testified that he was a healthy boy, had a good mind, good hearing and good eyesight, was active in his movements.

1. Aside from the testimony of the plaintiff himself, there is no room for doubt or question, testified to as it is by all of the witnesses, both on the part of plaintiff and defendant, who were in a position to see and to hear it, that to a person standing on or within twenty feet of the crossing on the north side of it, the view of the track to the westward of the crossing was clear and unobstructed for the distance of five hundred yards, and there were no cars on the side track to obstruct this clear and unobstructed view.

The engine had whistled for the crossing; the headlight was brightly burning; the bell was ringing and the train was on time; the engineer and fireman were at their respective posts; the train was making the usual noise, and plaintiff was expecting that very train; but he alone of all others, when he went to cross the track, though a bright, active boy, with a good mind, eyesight, and acquainted with the locality and with the dangers incident to crossing the track, though he listened he could not hear the whistle blown, nor the bell constantly ringing, nor the rumble of the train, nor see with his good young eyes the blazing headlight of the train as it rapidly advanced upon him. Such testimony as this is so contrary to the daily experience of common life, so at war with the conceded and indisputable physical facts in this case, that neither courts nor juries can without stultifying themselves, yield to it an iota of probative force or effect. It is a proposition too monstrously improbable for rational human belief. To argue to the contrary of this is to endeavor the transmutation of the impossible into possibility. However, in this *fin de siecle*, this questioning age, when axiomatic truths are doubted daily, and propositions wholly improbable are put forward with the most audacious assurance, it may not be amiss to cite and quote from courts and text-

writers of the highest respectability when treating of circumstances in all substantial respects similar to those presented by the case at bar.

"When one approaches a point upon the highway where a railway track is crossed upon the same level, it is his plain duty to proceed with caution; and if he attempts to cross the track, either on foot or in a vehicle of any description, he must exercise, in so doing, what the law regards ordinary care under the circumstances. He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption. The requirements of the law, moreover, proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term 'ordinary care under the circumstances' shall mean in these cases. In the progress of the law in this behalf, the question of care at railway crossings as affecting the traveler, is no longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as matter of law.

"In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. A multitude of decisions of all the courts enforce this reasonable rule. It is also consonant with right reason and the dictates of ordinary prudence, and so much in line with the ordinary care which the average of mankind display in the daily routine of life, that it should seem to be scarcely dependent upon the authority of decided cases in the law courts." Beach on Contrib. Neg. [2 Ed.], secs. 180, 181.

"In many cases in this court, parties injured, or their representatives, have been denied a recovery because of failing to observe the precautions mentioned in the sections just quoted. *Harlan v. Railroad*, 64

Mo. 480; *Fletcher v. Railroad*, 64 Mo. 484; *Harlan v. Railroad*, 65 Mo. 22; *Henze v. Railroad*, 71 Mo. 636; *Purl v. Railroad*, 72 Mo. 168; *Turner v. Railroad*, 74 Mo. 602; *Hixson v. Railroad*, 80 Mo. 335; *Fox v. Railroad*, 85 Mo. 679; *Kelly v. Railroad*, 88 Mo. 534.''

''In Michigan, an instruction in this form has met with frequent approval: 'The track itself is a warning of danger to those who go upon it, and persons about to cross a railroad track are bound to recognize the danger, and to make use of the sense of hearing as well as of sight, and, if either can not be rendered available, the obligation to use the other is the stronger to ascertain, before attempting to cross it, whether a train is in dangerous proximity; and if they neglect to do this, but venture blindly or carelessly upon the track, without any effort to ascertain whether a train is approaching, it must be at their own risk. Such conduct is of itself negligence.' *Mynning v. Railroad*, 59 Mich. 257, and cases cited.''

''In *Allen v. Railroad*, 19 Atl. Rep. 105, the supreme court of Maine says: 'The evidence shows that, at twenty-five or thirty feet distant from the crossing, the approaching train from Bath might have been seen by the plaintiff several hundred feet distant from the crossing. The plaintiff did not look in that direction until his horse's fore feet were between the rails. Was the neglect on his part to look in that direction a want of ordinary care and prudence? Is a traveler justified in driving upon a railroad crossing, in the absence of safety signals giving him the right to cross, without looking for an approaching train? It has been many times decided in this state that the traveler, before crossing a railroad, must both look and listen.  *  *  *  If the crossing at which the plaintiff was injured is so constructed that an approaching

train can not be seen until a traveler comes very near to the railroad track, common prudence requires him to approach at such speed that, when an approaching train may be seen, he may be able to stop, and allow such train to pass.'

"In a crossing accident case in Indiana, it is said by the supreme court of that state: 'The third instruction would have informed the jury, had it been given, that a railroad track is of itself a warning to those who go upon it, and that persons about to cross it are bound to recognize the danger, and to make use of the sense of hearing as well as that of sight, and. if either can not be made available, the obligation to use the other is the stronger; to ascertain before attempting to make the crossing whether or not a train is in dangerous proximity; and if one neglects to do this, but carelessly ventures upon the track, and is injured, it must be at his own risk; that such conduct is sufficient of itself to defeat a recovery. This instruction stated the law correctly. All persons who are acquainted with the manner in which railroad companies operate their trains over their lines of railroad know that there is always more or less danger in going along or across a railroad track; that there is always danger from a passing train; that safety requires that both the sense of sight and hearing must be exercised vigilantly to ascertain if a train is approaching; and hence a failure so to do would constitute negligence. This, we think, is self-evident. And if the circumstances are such that but one of the senses can be exercised, it is evident to any one that the sense which can be exercised should be employed with still greater vigilance. * * * If a crossing is particularly dangerous, and requires extraordinary effort to ascertain whether it is safe to attempt to pass over it, one familiar with the locality and danger surrounding it must use care pro-

portioned to the probable danger. This instruction unquestionably stated the law correctly. The greater the danger, the greater must be the care exercised. * * * The question of contributory negligence did not depend upon what the appellant's employees did, or did not do, but upon what the appellee's servant did, in the light of the *res gestae.* We are at a loss to understand what difference it could make, as to the caution to be used by the appellee's servant, whether there was or was not a statute requiring the giving of signals. It was his duty to stop and look for an approaching train, if there was any point within a reasonable distance from the crossing from which he could observe a train approaching; and, if no train was to be seen, it was his duty when nearing the crossing to stop and listen for the sound which ordinarily follows a moving train; and a statute requiring signals to be given, though violated, does not excuse this vigilance.' *Railroad v. Stommel,* 25 N. E. Rep. 863."

Counsel for plaintiffs, however, assert that:

"When the boy reached the railroad on his return home it was about dark, and he *did all in his power* to ascertain whether there were any trains approaching from either the east or west, and not seeing any and not hearing any, he started across, and while crossing he was struck by one of defendant's trains running through said city and over said crossing at the unlawful, reckless, negligent, and dangerous rate of speed of from thirty-five to forty miles per hour."

But in this instance it is plainly proved beyond peradventure that this statement of plaintiff "that he did all in his power to ascertain whether there were any trains approaching," etc., *was not, and indeed could not be, true.*

This matter of denying probative force, even to direct and affirmative testimony, when such testimony

is plainly at war with the physical facts and surroundings, has passed into precedent. Thus, in the leading case of *Artz v. Railroad*, 34 Iowa, 153 (*loc. cit.* 159, 160), it is said:

"But it is urged by the appellee's counsel that the plaintiff testifies that he did both look and listen to see and hear the train, but did not; and that this testimony shows that he was not guilty of contributory negligence, or, at the very least, it made that a question of fact for the jury. The difficulty, however, with the position is that the conceded or undisputed facts being true, this testimony can not, in the very nature of things, be also true. It constitutes, therefore, no conflict. Suppose the fact is conceded that the sun was shining bright and clear at a specified time, and a witness, having good eyes, should testify that at the time he looked and did not see it shine. Could this testimony be true? The witness may have been told that it was necessary to prove in the case that he did look and did not see the sun shine; he may have thought of it with a desire that it should have been so; he may have made himself first believe it was so, and this belief may have ripened into a conviction of its verity, and, possibly, he even may testify to it in the self-consciousness of integrity. But, after all, in the very nature of things, it can not be true, and hence can not, in the law, form any basis for a conflict upon which to rest a verdict. A man may possibly think he sees an object, which has no existence in fact, but which it may be difficult, if not impossible, to prove did not exist or was not seen. But an object and power of sight being conceded, the one may not negative the other. In this case the plaintiff had good eyes; the train was approaching him in the night, with the engine's headlight burning brightly; if the plaintiff looked he must have seen it, or he must have looked very negligently and care-

lessly—in either case he was necessarily, in the eyes of the law, guilty of contributory negligence, precluding his right to recover."

So, also, in *Marland v. Railroad*, 16 Atl. Rep. 623, speaking of the present matter under investigation, the supreme court of Pennsylvania said: "On the trial of this case the plaintiff testified that he stepped upon the track, and was instantly struck and injured. It is true he said he looked up and down the track, and saw nothing, but it is necessarily true also that, if he made use of his eyesight, he must have seen the approaching train. He could not possibly look along the track in the direction of the approaching train and fail to see it, since his presence on the track and the collision were simultaneous. We have pronounced emphatically upon such facts in several of our recent cases. In *Carroll v. Railroad Co.*, 12 Wkly. Notes Cas. 348, we said: 'The injury received by the plaintiff was attributable solely to his own gross carelessness. It is in vain to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive.'"

In the more recent case of *Myers v. Railroad*, 24 Atl. Rep. 747, WILLIAMS, J., said: "The rule is now well settled in this state that one approaching a railroad crossing upon a public highway must stop, look, and listen, at a convenient distance from the railroad track, before venturing to go upon it. This rule is imperative. If one disregards it, and suffers injury in the attempt to cross, the presumption of negligence on his part is a presumption *juris et de jure*. Having contributed to his own injury, he is remediless. If the traveler complies with the rule, and can see or hear a moving train approaching the crossing, what must he do? It follows logically from the rule now so firmly established that he must wait for the approaching train

to pass.  If he does not do so, he crosses at his peril.
*   *   *   If he does not wait, but risks his safety on
his own calculation of the chances that he will be able
to cross the track before the train can reach him, he
must not complain of the consequences if his calcula-
tion fails, and disaster overtakes him.   *   *   *   In
this case we encounter another question.  The plaintiff
says he complied with the rule.  At about 15 or 20 feet
from the track he says he stopped his team, looked
each way along the railroad, and listened; and that he
neither saw nor heard a train approaching.  He then
drove on, and while upon the track was struck and
injured.  If this is true he did all the rule requires,
and all that was possible to be done.  Is it true?  This
question the court below left to the jury, and they
promptly found that it was true.  The defendant asked
the court to say as a matter of law that upon the facts
of this case it was not true.  Our question is whether
this instruction should have been given.  The facts,
as shown by the plaintiff's case, are these:  (a)  The
track was straight and smooth and unobstructed, so
that from the crossing, or the point where the plaintiff
says he stopped to look and listen, it could be seen
for more than half a mile in either direction.  (b)  The
speed of the train was from 10 to 12 miles per hour.
(c)  The engine was running backwards, with a large
reflecting headlight perched upon the top of the tender,
facing toward the crossing, and another in its usual
place on the front of the engine.   *   *,   *   It is abso-
lutely certain from the plaintiff's own testimony that
the headlight upon the tender, at the time he says he
stopped, could not have been, on any estimate of the
rates of speed, more than two or three hundred feet
away, and in plain view.  If he had stopped and
listened he must have heard the noise of the train.
If he had looked, the blazing headlight would have

confronted him, for it was squarely in his line of vision, throwing its glare over intervening objects, and making the darkness on either side darker by the contrast. The fact that four or five seconds after he says he looked and listened he was struck by a train that must have been plainly visible, and almost on him at the time he alleges he looked, is so palpably and absolutely irreconcilable with the truth of his statement that he did stop, look both ways, and listen before driving upon the crossing, that it is trifling with justice to permit a jury to find that it is true. Such a finding is absurd. It is simply and flatly impossible that one can stop, look, and listen for an approaching train that is in plain view and close at hand, and be unable to see or hear it, if he possesses the senses of sight and hearing. It seems, therefore, necessary to advance one step in the application of the doctrine of legal presumption, and to lay it down as a rule that one who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop, look, and listen, must be conclusively presumed to have disregarded that rule of law and of common prudence, and to have gone negligently into an obvious danger. A line of well considered cases leads fairly up to this conclusion.''

''If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligence *per se*.'' Beach on Contributory Negligence [2 Ed.], sec. 182. To the same effect see Wharton on Negligence [2 Ed.], sec. 382.

Even in criminal cases, cases involving liberty or life, we have repeatedly ruled that, if a party testifies directly in the face of, and in opposition to, obvious

physical facts, neither courts nor juries are bound to stultify themselves by giving credence to such testimony. *State v. Anderson*, 89 Mo. 332; *State v. Bryant*, 102 Mo. 24; *State v. Turlington*, 102 Mo. 642; *State v. Nelson*, 118 Mo. 124; *State v. Brown*, 119 Mo. 527. To the like effect see 4 Elliott on Railroads, sec. 1703 and cases cited.

*Myers's* case was approvingly cited and quoted from by MACFARLANE, J., in *Kelsay's* case, 129 Mo. 362, where the controlling circumstances were virtually the same in legal effect as in the case before us. Of the same substantial import is *Hayden's* case, 124 Mo. 566, per BRACE, C. J. See, also, *Lane's* case, 132 Mo. 4.

Now look at the pivotal facts preserved in this record; Smiley, one of plaintiff's witnesses, when speaking of plaintiff's whereabouts, says: "When I first saw him, he was something like four or five feet from the rail, and he was going right south, and the train was up there two hundred or three hundred feet above on the track." This witness is not contradicted, but is supported by every other witness who was in a position to see it, that the train was in full view as it advanced down the track. Indeed, it is one of the conceded facts in the case that the train was obvious to everyone who, along or near the track, cared to see it, and within hearing of every one along or near the track who cared to hear it. This is the positive and uncontradicted testimony of every witness who testified as to seeing or hearing the train. Opposed to this positive testimony is the merely negative testimony of plaintiff that he did not see or hear the train coming. But applying the rule heretofore announced by the authorities, supported as it is by the dictates of the most cogent reason, it is wholly immaterial what the plaintiff swears as to his inability to see or hear the train, or what verdict the jury returned, because when

a witness attempts to overthrow by his oath the. obvious and indisputable physical facts in a case, that oath is not to be received or regarded *as true*, nor will the *verdict* which the jury return based on such oath be accepted for what its name imports, *"a true saying."*

2.   But it is contended by plaintiff's counsel that notwithstanding plaintiff may have been negligent, yet that inasmuch as contributory negligence is not to be imputed to an *infant* or *"mere child"* in the same way or to the same extent as would be applicable ·to an *adult*, that, therefore, the law of contributory negligence can not be applied to plaintiff because of his age.

This contention leads us to recur again to the evidence.   The testimony of plaintiff and of his mother abundantly establish that his judgment and discretion, his ability to take care of himself, were adequate to that task; indeed were equal to the judgment and discretion of the average man of mature years.   This being the case, it is ·difficult to see why the same rule as to contributory negligence should not apply to a boy equal in capacity and intelligence to the average man as to the danger to be apprehended and guarded against in crossing a railroad track, as should apply to such man. .The reason of the law of contributory negligence being founded upon ·knowledge of the danger to be apprehended and capacity and discretion to avoid it, whenever you prove the existence in equal degree of those elements and ingredients in an infant which go to make up the responsibility of an adult, you thereby necessarily determine the responsibility of the infant and his amenability to the same law. In a word, as absence of capacity and intelligence exonerates or exempts an infant from the operation of that law, so the proven presence and established existence of such qualities and attributes in an infant, clothes and casts upon him the same

responsibility as is possessed by, and recognized in, an adult.    *Cessat ratio cessat ipsa lex.*

This view of the law has recently been announced by this court in *Spillane v. Railroad*, in an opinion delivered per GANTT, P. J., 135 Mo. 414, where the plaintiff, an unusually bright boy, a little over nine years of age, was injured by a train near a crossing.

Numerous decisions support the conclusion there reached, at least so far as to hold an infant amenable to the law of contributory negligence, and incapable of recovery where that law being disregarded and disobeyed the usual incident, resultant injury occurs. Some of the cases to be presently instanced, go even to the extent of placing an infant of demonstrated capacity and intelligence on the same plane of responsibility as if an adult.

In *Messenger v. Dennie*, 137 Mass. 197, a boy eight years and nine months old, who, while engaged in the sport of riding upon the runners of sleighs in the public streets, suddenly leaves a sleigh on which he is riding, while it is in motion, in a frequented thoroughfare, without looking behind him, and within thirty feet of a horse and sleigh following it, by which he is struck and injured, is guilty of such negligence as to preclude him from maintaining an action for the injury; and it was ruled in that case that on the facts proved, the plaintiff should have been denied a recovery as a matter of law.

So, too, in *Twist v. Railroad*, 39 Minn. 164, an intelligent boy, ten and one half years old, and quite conversant with the danger he was incurring, being injured, was held guilty of such contributory negligence as a matter of law. It is true in that case the injured boy was a trespasser, but it is not seen that this fact at all weakens the effect of his contributory negligence, since it is not a question of right to be in a

given locality which determines the matter at issue, but whether there are adequate intelligence and capacity to apprehend, discover, and guard against danger to be expected in that locality.

A bright boy of twelve years of age met his death at a railroad crossing in the city of New York, in the following circumstances: It appeared from the evidence on behalf of plaintiff that the deceased, having crossed the track, turned back to recross it, when the train was in plain view, distant about four hundred feet, and he must have seen it had he looked; that either he caught his foot in or near the rails or he stumbled, and fell, was struck by the engine and killed. *Held*, that such attempt to recross was negligence on his part, whether he could or could not have crossed in safety had he not been delayed by catching his foot or stumbling; and that a motion to dismiss the complaint on the ground of his contributory negligence should have been granted. *McPhillips v. Railroad*, 12 Daly, 365.

In *Wendell v. Railroad*, 91 N. Y. 420, another crossing accident is reported, and in discussing the case, RUGER, C. J., said: "At the time of the accident he was a bright, active boy about seven years of age, considered competent by his parents to go to school and upon errands alone. He was sometimes intrusted with the duty of driving a horse and wagon, and was in the habit of crossing the railroad track at the place where the accident occurred. Previous to the accident he had been stopped while attempting to cross by the flagmen stationed at that point, and had been before cautioned by them against attempting to cross in front of an approaching train. The accident happened in broad daylight, and from the place where it occurred a train could be seen for upwards of five hundred (500) feet south of the crossing. The street on which the boy

was passing (Main street) marked the southern bound-
ary of the settled part of the city. No buildings lined
the railroad south of Main street, and from the point
where the boy started to cross the track, no object
intercepts a view of an approaching train for a long
distance. No conflict as to these facts appears in the
evidence, and they are mainly proven by the statements
of the plaintiffs' witnesses. The case was tried upon
the assumption by the court and both parties that the
deceased was *sui juris* * * *. * * * at the time
of the accident he was upon an errand for his mother
which required him to cross this railroad track. The
assumption that the boy was *sui juris* implies that he
had sufficient mental and physical capacity to be
chargeable with the exercise of some degree of care and
prudence and responsible for the consequences of some
degree of negligence, but doubtless, owing to his tender
years, a lesser degree of care was required of him than
of one of mature age. Nevertheless an infant, what-
ever his age, is not in law altogether exempted from the
exercise of care and prudence in approaching a known
danger. * * *

"In the light of these principles let us examine the
circumstances of this case. Shortly before the accident
the deceased with a companion two years older was
standing near the flagman's shanty on the south side
of Main street and fifty-one feet east from where he
was struck. The flagmen had left the shanty and
approached the track in the performance of their duty.
The approaching train was in plain sight from the place
where the boys stood for a distance of about five
hundred feet from the crossing. They both suddenly
started on a run on the south sidewalk of the street,
the older boy some fifteen feet in advance, to cross in
front of the approaching train. The flagmen who
faced the boys shouted to them to stop, and waived

their flags as signals to them. The older boy passed the flagmen and crossed in safety. Eckel, one of the flagmen, stood on the sidewalk ten or fifteen feet from the track on which the train approached and endeavored to intercept the deceased, but the latter eluded him by either dodging or running under his outstretched arms, and reached the track when he slipped and fell. The flagman followed and endeavored to rescue him, but the train was so near that he failed in his attempt, and the boy was killed. * * * All of the bystanders were aware of the approaching train and seemed to anticipate danger to the boys. * * *

"Under the circumstances we think he was negligent, either in going upon the track without looking to see whether a train was coming or not, or if he did look and see it, in doing so while it was in such dangerous proximity. The exercise of active vigilance under such circumstances was a duty which the law imposes upon every person who attempts to cross a railroad track. He should not be permitted to make close calculations to determine whether he can safely pass in front of an approaching body, and when the experiment has failed, charge the consequences of his mistake upon the owner of the colliding vehicle, or property (*Belton v. Baxter*, 54 N. Y. 246; 13 Am. Rep. 578)."

And upon these facts the judgment was reversed, because of failure of the trial court to nonsuit the plaintiff.

In Michigan, a boy of twelve years, unusually bright for his age, was killed in a collision by climbing upon and riding on, the front of an engine, out of sight of the employes, and as the evidence of his negligence was clear and undisputed, it was held that the boy was not a trespasser, but that the lower court was correct in

directing a verdict for the defendant railroad, MORSE, J., remarking:

"A boy of twelve years knows as well as an adult that upon the top of freight cars, or in front of the engine, when reversed, between that and the cars, is not a safe place when the train is moving. The fact that a boy of that age is more reckless and not as cautious as a man in the face of such danger is not of itself enough to excuse him. I can see no reason for submitting a question as plain and clear as this one to a jury. There could be but one result if the judgment and oaths of the jurors were not warped and disregarded because of the natural sympathy that goes out instinctively toward the sufferer in such a case as this. The plaintiff's intestate was guilty of contributory negligence in riding as he did upon the train, and no fault of the company or its employes, short of gross or wanton carelessness, can excuse him from the results of such negligence." *Ecliff v. Railroad*, 64 Mich. 196, *loc. cit.* 203.

So in Iowa, a boy between eleven and twelve years of age was struck by a passing train and killed while he, with other boys, was playing or lounging on the track. The train by which he was struck was running at about twenty-five miles per hour, while an ordinance of Des Moines forbade trains from running within the city limits at a speed greater than six miles an hour. ADAMS, C. J., after remarking that deceased was a trespasser, proceeds to say: "He was guilty of contributory negligence, unless he was a person of such tender years that he should be presumed to have such lack of discretion as to relieve his act of the character of negligence. The plaintiff contends that he was of such tender years; that he should have been so presumed, or at least that the jury would have been justified in so finding. But we think otherwise. A boy

eleven years of age knows, as well as an adult does, what a railroad is, and the use to which it is put, and the consequence to a person who should be struck by a passing train, and knows that he should not stop to play or lounge amid a network of tracks. It is true that a boy of that age can not be presumed to have the judgment of an adult; but it does not require much judgment to keep from walking in a dangerous place, the dangers of which are fully understood. * *. * We hold that under the undisputed evidence the deceased was guilty of contributory negligence, and that such negligence precludes the plaintiff from setting up any negligence of the defendant prior- to the time the deceased was discovered by the defendant's employes.'' The verdict in that case was for the defendant, and it was ruled that such verdict should be allowed to stand, and that it was error to set it aside. *Masser v. Railroad*, 68 Iowa, 602.

In North Carolina an infant of eight years of age, in disobedience of the commands of his mother, and the warnings of defendant's agents and servants, and, unobserved by the engineer, jumped upon a ''shifting'' engine about to move, took a position where he could not be seen by those in charge of and operating the engine, and remained there until, becoming alarmed at the speed, he attempted to jump off and received severe injuries; it was held, that he was not entitled to recover though no whistle was blown or other signal given, and this on the ground of contributory negligence. *Murray v. Railroad*, 93 N. C. 92.

In Wisconsin, an infant thirteen years of age fell through a hole in a bridge and was drowned. His mother, it seems, sent him across the bridge on an errand. It appeared from the plaintiff's evidence that the deceased was thirteen years old; that he was familiar with the bridge, and knew of the hole in it; and

that the accident occurred in the daytime, and he had passed over the bridge a short time before on the same day. The defendant city having gained a verdict, on appeal the judgment was affirmed, on the ground that deceased was a person of sufficient discretion, knowing the danger, to have avoided it, by the exercise of ordinary care, and that therefore his death was to be attributed to his want of proper care, to wit, contributory negligence. *Achtenhagen v. Watertown*, 18 Wis. 331.

T was a boy twelve years old, intelligent, accustomed to attend school and assist the family by his labor; he lived near defendant's road; he was killed by one of defendant's locomotives when attempting to cross its tracks; the day was windy, and it was snowing, but not enough to obstruct the view; the street upon which he was traveling was crossed by four of defendant's tracks; the first was a switch track upon which cars were standing on each side of the street, a passage-way having been left open for teams and individuals to pass along the street. T stopped in the center of the switch track facing the direction of the locomotive which was backing down at a high rate of speed; if he had looked he could have seen one hundred and eighty-six feet down the track; from the point where he stood to the center of the track where he was struck and killed, the distance was fourteen feet. T, after changing a bag he was carrying from one shoulder to another, started on; after taking one step he had an unobstructed view down the track on which the locomotive was coming, for two streets; he did not look in that direction after he started. Held, that T was *sui juris* and was guilty of contributory negligence; and that the submission of the question to the jury was error, and held also, that in the absence of evidence tending to show that a boy twelve years of age was not qualified to understand the danger and

appreciate the necessity for observing that degree of caution in crossing a railroad track an adult would, he must be deemed *sui juris* and chargeable with the same measure of caution as an adult. And the judgment was reversed. *Tucker v. Railroad*, 124 N. Y. 308. See, also, 3 Elliott on Railroads, sec. 1172.

In the light of these authorities and the reasons they suggest, it should be ruled that plaintiff was *sui juris*, and being guilty beyond doubt of contributory negligence is not entitled to recover in this action. And in concluding this paragraph, it is well enough to remark that when this cause was here on a former occasion (129 Mo. 405) the facts now in evidence as to plaintiff's intelligence and capacity were not nearly so fully developed.

3. Though defendant may have been guilty of running its train at a greater rate of speed than allowed by ordinance, yet as it is clear that plaintiff was indubitably guilty of contributory negligence which was the immediate cause of his injury, the negligence of defendant can not be invoked to aid plaintiff in a recovery. *Prewitt v. Eddy*, 115 Mo. 283; 3 Elliott on Railroads, secs. 1165, 1166, and cases cited.

4. But it may even be conceded that plaintiff was not negligent so far as being struck by defendant's train or engine and still he should be denied a recovery, and for these reasons: In the evidence already related, there is *none that plaintiff was struck by the engine.* A number of witnesses testified that he was not thus struck, and he does not pretend that he was. He says the train ran over him, but this all may be literally true and still it be also true that the engine or cowcatcher never struck him. How then did the train come to run over him?

The answer is given in the testimony of several witnesses: Chinn who, *sitting* on the porch the Arcade

Hotel, on the north side of the Russell street crossing, saw a boy coming from the south side of the crossing, and when the train came along, he saw that boy under and on the south side of the train; he seemed to be snatching at something; he seemed to be reaching after it, like he was reaching for the steps or some part of the train, the same as a person would do to catch the car with both hands. In the testimony of Bowman, who was only some six or seven feet from the train and on the south side of it as it passed the crossing, saw plaintiff going north on crossing and while on the *south* side of the train, make a grab at the train, at the banister or step of about the third car, and he held a little too tight and it jerked him under; when the boy grabbed at the train he was just close enough to it to reach out with his hand and touch the banister on the steps. In the testimony of Rutherford and Taylor, who went to plaintiff after the train had passed and left him lying on the *south* side of the main track, and when they asked him what was the matter and how he got hurt, he said to Rutherford that he was putting out his hand, or putting it on the train, and it ran over him. To Taylor he said that he was holding out his hand to the train, and that it ran over him. In the testimony of Dornblaser, who, standing in front of the Arcade Hotel, saw a negro boy who looked to be twelve or thirteen years old, approaching the crossing from the *south* side of the track, but just then the train came along, passed between him and the boy and he saw him no more.

Now plaintiff does not attempt to deny the truth of the statements of these witnesses, and therefore their statements are to be taken as true, as much so as if plaintiff had made the admission in terms, as has been frequently ruled by this court in criminal cases. *State v. Musick*, 101 Mo. *loc. cit.* 271; *State v. Patrick*, 107

Mo. *loc. cit.* 174; *State v. Alexander*, 119 Mo. *loc. cit.* 461; *State v. Paxton*, 126 Mo. *loc. cit.* 514; *State v. Good*, 132 Mo. *loc. cit.* 125; *State v. Taylor*, 134 Mo. *loc. cit.* 148; *Comstock v. State*, 14 Neb. *loc. cit.* 209.

And obviously, if this rule obtains in *criminal* cases against a *defendant witness*, *a fortiori* should it obtain against a *plaintiff* witness in a *civil* case. For this reason we hold that it stands admitted on this record that plaintiff was not struck on the crossing by the train, but was hurt after he had crossed, by heedlessly attempting to catch hold of the train as it passed by, and was thus jerked under it and injured. In such circumstances it only remains to say that, viewed in any light, the judgment should be reversed and judgment entered in this court for defendant. GANTT, MACFARLANE, and ROBINSON, JJ., concur. BURGESS, J., in paragraph 4 only. BRACE, C. J., and BARCLAY, J., dissent.