SPILLANE, *Plaintiff in Error*, v. MISSOURI PACIFIC RAILWAY COMPANY.

Division Two, October 7, 1896.

1. **Railroad:** NEGLIGENCE: ORDINANCE. A municipal ordinance requiring a railroad company to station watchmen at certain crossings to protect persons about to cross the tracks "at any such crossing" is properly excluded in an action for an injury received at a point several hundred feet from one of the designated crossings.

2. ———: ———: INFANT: DEGREE OF CARE REQUIRED. While the law will not indulge a presumption that a boy nine years of age is capable of exercising that prudence which would be required and expected of an adult, it will require of him the exercise of care commensurate with the intelligence, capacity, and experience he is shown to possess.

3. ——— : ——— : ———: ———.  Where it is shown that an infant is old enough to know the danger of going upon railroad tracks, that he is intelligent and conversant with the management of trains thereon, he will not be absolved from the duty of looking and listening for trains and of avoiding danger by leaving the track.

4. ——— : ——— : ———: ———: INSTRUCTION.  Error in an instruction as to the degree of care required of a boy while crossing a railroad track is harmless, where he was not on the track when hurt, but was standing beside it and the accident was caused by the locomotive striking a string, one end of which was tied to the boy's wrist and the other to a piece of ice on the opposite side of the track.

5. ——— : ——— : ———: ——— : ———.  An instruction to the effect that if plaintiff and defendant were guilty of negligence which directly contributed to plaintiff's injury he could not recover, *held* proper.

6. ——— : ——— : ———: ———.  Evidence that the plaintiff, an intelligent boy nine years old and conversant with the movement of trains in the locality where the injury occurred, stood near the track as the train passed, having one end of a string tied to his wrist and the other to a piece of ice on the opposite side of the track and that the locomotive struck the string so that the plaintiff was thrown against the train and injured, conclusively establishes contributory negligence on his part.

*Error to Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*R. H. Hamilton*, *R. E. Ball*, and *Fyke, Yates & Fyke* for plaintiff in error.

(1) The ordinance excluded by the court provides, "One or more watchmen shall be employed * * * to be stationed at each of the crossings hereinafter named, whose duty it shall be by day and night, to notify all persons about to cross the railroad track at any such crossing, of the approach of any locomotive, tender or car." The failure of defendant to have such watchman at the crossing of Grand avenue and Front street, is one of the grounds of negligence alleged in the petition. The mere fact that the

boy was not struck immediately upon the crossing is immaterial, because, if the watchman had been at his post of duty, he might have seen the boy and warned him of the approaching train. It can not be contended that the watchman was called upon to watch simply between the four corners of the crossing, especially in view of the circumstances of this case, which show that people frequently passed diagonally across Front street, with wagons and teams and otherwise. . Such persons were entitled to the protection of these ordinances, as fully as persons who desired to cross straight across the street. (2) Defendant's third instruction is erroneous. *Spillane v. Railroad*, 111 Mo. 564. (3) Defendant's fifth instruction is erroneous. *Kelly v. Union Railway and Transit Co.*, 95 Mo. 279–285; *Dunkman v. Railroad*, 95 Mo. 232. (4) Defendant's seventh instruction is erroneous. It selects out a part of the facts and bases the declaration of law upon them, ignoring the remainder. This is improper. *Barr v. Kansas City*, 105 Mo. 557–559. (5) For the reasons above stated the court erred in overruling plaintiff's motion for a new trial.

*Robinson & Carkener* for respondent.

(1) The city ordinance requiring a watchman to be kept at Grand avenue crossing was properly excluded. *Bell v. Railroad*, 72 Mo. 50; *Hardy v. Railroad*, 42 N. Y. 468; *Railroad v. Feathers*, 10 Lea (Tenn.), 103. (2) The trial court did not err in giving defendant's third instruction. *Ridenhour v. Railroad*, 102 Mo. 270; *Tucker v. Railroad*, 124 N. Y. 308; *Wendell v. Railroad*, 91 N. Y. 420; *Reynolds v. Railroad*, 58 N. Y. 248. (3) Nor did the trial court err in giving instruction number 5 asked by defendants. (4) If the accident was caused by the plaintiff stand-

ing by the side of the track with the ice tied to his arm so situated as to be caught by the passing engine, then the speed of the train whether lawful or unlawful could not be held to have been the proximate cause of the accident. *Railroad v. Staley* (Ohio), 19 Am. and Eng. R. R. Cases, 381; *McClary v. Railroad*, 3 Neb. 53; *Lowery v. Tel. Co.*, 60 N. Y. 198; *Railroad v. Reeves*, 10 Wall. 176; *Hoodley v. Trans. Co.*, 115 Mass. 305.

GANTT, P. J.—This is an action for damages resulting from personal injuries sustained by plaintiff on the thirteenth of October, 1888. This is the second appeal in the cause. The first is reported in 111 Mo. 559. On the last trial the jury returned a verdict for defendant from which plaintiff brings error.

The accident occurred at a point on defendant's railway in Kansas City two hundred and sixty-five feet east of the east line of Grand avenue where said avenue intersects defendant's tracks on Front street. At this point and for several hundred feet both east and west the defendant's railway is located on and along Front street in said city. Grand avenue runs north and south and the railway east and west. Across Grand avenue and at the point where the accident occurred, the defendants' railway consists of four parallel tracks.

Beginning at the south the first track is known as the outgoing or east bound main track, the second, as the incoming or west bound track, the other two are team or storage tracks used in loading or unloading freight. East of Grand avenue the tracks are straight but three hundred or four hundred feet west of Grand avenue there is a curve so that a person coming from the west along the railroad track could not see beyond Grand avenue until after having passed this curve, nor

could a person on the track east of Grand avenue see a train coming from the west until after it rounded this curve.

Coming from the west there is a considerable up grade until near Grand avenue and from that point east the track is practically level. The defendant's freight depot is located on the north side of the tracks and on the west side of Grand avenue and about fifty feet from the west line of said street and its passenger depot is located on the south side of the tracks and east side of Grand avenue. The platform of this depot extends from the east line of Grand avenue eastwardly from one hundred to two hundred feet, as variously estimated by the witnesses.

Wood Brothers' ice house is located on the north side of the tracks and something over three hundred feet east of Grand avenue. The two main tracks are located on Front street while the two team tracks on the north are located on private property just north of the north line of said street. The tracks are only a few feet apart and the spaces between the rails are planked over for the accommodation of passengers getting on and off trains and of persons desiring to load and unload freight.

Teamsters and other persons having occasion to go to Wood Brothers' ice house were accustomed to travel north on Grand avenue until reaching the railway tracks and thence diagonally across the tracks to a wagon road on the north side of the tracks leading to said ice house. This road leaves the railroad tracks at a point one hundred and fifty feet east of the east line of Grand avenue and one hundred and six feet west of the point where the plaintiff received his injuries.

The plat accompanying this opinion accurately describes the situation of the various points referred to in the testimony of the witnesses:

A  Point where accident occurred, 266 E. Grand Ave.
B  Wood Bros.' ice house.
C C Route usually traveled to Wood Bros.
D  Point 150 feet E. Grand Ave.
E  Passenger depot.
F  Platform.
G  Freight depot.
O O West line Grand Ave.
P P East line Grand Ave.

N

The plaintiff's father resided with his family, on Grand avenue, about a block and a half south of defendant's tracks. He had lived there about two years prior to the date of the accident, and had lived in the neighborhood of the place where the accident occurred for several years prior to that time. During all this time the plaintiff had been accustomed to playing about the railroad tracks and was perfectly familiar with everything in the locality and of the movement of the trains. According to plaintiff's own testimony, as well as that of his father and mother, and several neighbors who were intimately acquainted with him, he was a very bright, intelligent boy, and perfectly aware of the danger of being on or about the railroad tracks while trains were passing. At the time of the accident the plaintiff was something over nine years old. A month prior to the accident his mother had given to Miss Halbert, a teacher in the school to which plaintiff was sent, a statement that he was then nine years and three months old. During the summer vacation preceding the accident he had been engaged in selling papers around the city, and had continued this in the evenings after the session of school began. His mother had been accustomed to send him to Wood Brothers for ice. In the afternoon of the day of the accident he was sent by his mother to Wood Brothers for a piece of ice. He took with him a twine string, and tied one end of it to the ice, and the other end to his wrist, for the purpose of dragging the ice home, instead of carrying it. He was accompanied by his brother, a boy about seven years old. *So far as the evidence shows, no person saw him from the time he left the ice house until after the accident had occurred.*

A switch engine, hauling about forty cars, passed eastwardly on the south track, and just after it passed the plaintiff was discovered lying on the south side of

this track at a point two hundred and sixty-six feet east of the east line of Grand avenue. He had received a very severe scalp wound and the ends of two of the fingers of the left hand were mashed. None of the trainmen saw the plaintiff at the time of the accident. The engineer and fireman were at their proper places in the cab and looking forward, but neither they nor any of the other trainmen knew of the accident until several hours after it had occurred. They were taking the cars to different places in the bottoms east of Kansas City and did not return until late in the afternoon. When they returned they were informed by Mr. Hennesy, the defendant's freight agent at Grand avenue, of the accident.

The petition charged negligence, *first*, in the failure to have a watchman present at the Grand avenue crossing of defendant's tracks, as required by sections 816 and 819 of chapter 42 of the ordinances of said city and, *second*, in running said train in excess of six miles an hour in violation of the ordinances of said city.

Section 816 provides that "one or more watchmen shall be employed at the expense of the person or corporation using railroad tracks or operating railroads within this city, to be stationed at each of the crossings hereinafter named, whose duty it shall be by day and night to notify all persons about to cross the railroad track at any such crossing of the approach of any locomotive, tender, or car.

Section 819 designates as one of such crossings the crossing by the railroad tracks over Grand avenue at Front street.

Section 820 imposed a penalty of not less than $25 nor more than $500 upon any conductor, engineer, fireman, brakeman, or other person who should move, or cause, or allow to be moved, any locomotive within the city limits at a greater speed than six miles per

hour.    The circuit court excluded sections 816 and 819 of the ordinances upon objections of defendant.

The testimony was very conflicting as to the rate of speed of the train, plaintiff's witnesses placing it at twenty-five to thirty-five miles an hour, and defendant's at not exceeding six or perhaps ten.    Other facts necessary to an understanding of the case will be stated in the opinion.

The errors assigned are:

*First.*    The court erred in excluding section 816 of the ordinances set out in plaintiff's petition.

*Second.*    The court erred in giving defendant's instruction number 3.

*Third.*    The court erred in giving defendant's instruction number 5.

*Fourth.*    The court erred in giving defendant's instruction number 7.

I.    The circuit court did not err in excluding section 816 of the ordinances.    It was irrelevant to the case.    That ordinance had in view the protection of persons "about to cross the railroad track at the designated crossings."    As all the evidence showed, the plaintiff was not hurt at the crossing and was not about to cross the tracks at a point where a watchman had been deemed necessary by the city council, but was hurt two hundred and sixty-six feet east of said Grand avenue crossing, the failure to have a watchman at that crossing did not contribute in any degree to plaintiff's injury, and had no causal connection therewith. Plaintiff entirely failed to bring himself within the protection afforded by the ordinance.

II.    The second assignment challenges the correctness of the defendant's third instruction.

That instruction is in these words:

"The jury are instructed that the defendant railroad company had a right to run its locomotives and

train of cars along and across the street where the plaintiff received his injury, at the time the accident occurred, and that it was the duty of the plaintiff to use his eyes and ears when attempting to cross the tracks of defendant to ascertain if there was a train approaching, before he entered upon the track of defendant; and if the jury find that the plaintiff could have seen or heard the approaching train by the use of his eyes and ears, or by the exercise of ordinary care and diligence on his part could have seen or heard the train approaching in time to have avoided the injury, then you should find for the defendant, although you may further believe from the evidence that the train and locomotive were running at a rate of speed exceeding six miles an hour; *and the degree of care and diligence the law required him to exercise at the time of the accident was such care and diligence as might reasonably be expected of one of his age, intelligence, capacity, and experience.*"

It is insisted that it is contradictory in itself; that in one breath it informs the jury that it was his absolute duty to look and listen for the train and in another that it was not his duty to do so unless the jury found that a boy of his age, intelligence, and experience would reasonably have done so.

The instruction is open to criticism. It is unhappily drawn and yet when all its parts are read together and the whole read in connection with plaintiff's third instruction which told the jury that "plaintiff was only required in crossing said railway to exercise that degree of care which, under like circumstances, could reasonably have been expected of a boy of his years and experience; and that if he did exercise such care, as, under like circumstances, could have been expected of a boy of his years, capacity, and experience he was not guilty of contributory negligence," we think it can

hardly be said to have misled the jury as to the measure of plaintiff's responsibility for the exercise of care in going upon the track. The instruction is by no means a model and is not to be followed as a precedent.

The judgment of the circuit court ought not to be reversed on account of error in this instruction, because it is obvious he was not on the track when struck. The physical facts and plaintiff's own evidence and his statements to Dr. Iuen soon after he was hurt, all tend to show beyond cavil that he was outside of the track when he was hurt. He testified on the first trial that he had the rope or string dragging the piece of ice and the engine came along and caught the rope and he could not let go and it threw him down. To Dr. Iuen he said the ice was on one side of the track and he was on the other and the accident was caused by the engine catching the string and jerking him down.

His mother testified he had the string tied around his wrist when they brought him home after he was hurt. In view of all this evidence it is obvious that the issue tendered as to crossing the tracks was really *outside of the case* made.

But there is another and potent reason why this instruction should not cause a reversal. This boy was shown to be conversant with the running of trains at this place. He lived very close to the depot and frequently played about the tracks. It was shown he was an exceedingly bright and intelligent boy. When his mother was asked "if he was old enough and smart enough to know the danger of being on a railroad track when a train was coming," she answered, "I expect so." He was trusted to go down in the city and sell newspapers. He had gone to school. The accident occurred in broad daylight just after the noon hour. There was nothing whatever to prevent his see-

ing the train coming from the west for a distance of four hundred feet.

While the law does not permit a presumption that a boy nine years old is capable of exercising that prudence which would be exacted and expected of an adult, it does require of him the exercise of care commensurate with the intelligence, capacity, and experience he is shown to possess.

As was said by BARCLAY, J., in *Ridenhour v. Railroad*, 102 Mo. 270: "While the law makes due allowance for the thoughtlessness and indiscretion of youth it does not hold it necessarily irresponsible. * * * To the extent that a child has knowledge and understanding of a danger *or where it is of such nature as to be necessarily obvious even to one of his years, he is under a legal duty to avoid it.*"

When the intelligence of this boy testified to by his own parents, teachers, and relatives is considered along with his experience shown to have been acquired by living in the immediate vicinity of those tracks, and the glaring, obvious danger of standing on a railroad track on which he knew trains were constantly moving, we can discern no reason why he should not be held responsible for the recklessness of his conduct.

He was asked.

"*Q.* Now when you got on the tracks did you look up toward the west? *A. No, sir.*

"Did you look east? *No, sir.*

"You didn't look east or west? *No, sir.*

"Did you stop right on the track? *Yes, sir.*

"You had been there a good many times? *Yes, sir.*

"*You knew trains went along there repeatedly? Were passing there every few minutes? Yes, sir.*"

He further says he was moving along in an ordinary walk. "*Didn't hurry at all.*"

There is in this evidence not a semblance of any

kind of care, not the slightest. Notwithstanding his rashness it appears from his own testimony that he had safely passed over the track and yet stood there with the ice on the opposite side of the track and tied to his wrist by a string or rope, and so close that when the engine struck the string it threw him down and evidently brought his head in contact with some portion of the train by which his scalp was nearly torn off and two fingers mashed.

In *Payne v. Railroad,* 129 Mo. *loc. cit.* 421, it was said: "Such an act of pure rashness can not be excused even in a boy of the age and capacity of plaintiff." (An ordinary negro boy, eleven years old.) It follows that no error was committed in telling the jury under the facts of this case that it was his duty to have used his eyes and his ears, and the modification was fully as favorable as he had any right to ask.

When the facts disclose that an infant is old enough to know the danger of going upon railroad tracks; that he is intelligent and is conversant with the management of trains thereon, we know of no principle of law which would absolve him from the duty of looking and listening for trains and from avoiding danger by getting off of the tracks. In this connection the analogies of the law respecting the doctrine of *doli capax* seem pertinent and may be invoked by way of illustration.

In cases of felonies by infants *malitia supplet aetatem* (*State v. Adams,* 76 Mo. 355) because notwithstanding the law presumes an infant between the age of seven and fourteen years *doli incapax* yet this *prima facie* case of incapacity may be overcome by proof, and, if it is, the infant is amenable to punishment just as an adult, and in civil actions by the infant for damages when the intelligence, experience, and capacity of the infant is shown to be commensurate with that of

an adult and there is no conflict as to his capacity, no reason appears why this intelligence and experience should not supply the lack of age nor why a court should not declare his responsibility as a question of law.

Doubtless a boy of this age living as plaintiff did for years in the immediate vicinity of this crossing knew the danger that he would incur in crossing the tracks better than thousands of adults who rarely have occasion to cross railroad tracks and yet are conclusively presumed negligent if they attempt to cross them without looking or listening. Our conclusion is that the giving of the instruction was not reversible error in view of the undisputed facts.

III.     There was no error in the fifth instruction for defendant. It simply told the jury that if they found that both plaintiff and defendant were guilty of negligence which directly contributed to plaintiff's injury, plaintiff could not recover.

Plaintiff's cotemporaneous concurring negligence directly contributing to his injury was a complete defense to his action. This has been the law too long to require a discussion of the grounds upon which it is based. There was no evidence that plaintiff was on the track after the train came in sight and nothing upon which it could be assumed that the engineer could have avoided injuring him after he discovered his peril.

IV.     Finally, it is urged that it was error to give the seventh instruction for defendant, as follows: "If the jury believe from the evidence in the case that the plaintiff was not on the track in front of the engine when it approached from the west, at the time of the accident, but was on the outside and north of said track, then the employees in charge of said engine were not bound to know or anticipate that there was

any danger of his being hurt; and if the jury further believe from the evidence of this case that plaintiff was not on the track at the time he was hurt, but was outside of the track, and that he had a string tied to his arm, the other end of which was attached to a piece of ice, and if the jury believe that the passing engine caught the ice or string, and thereby caused the plaintiff's injury, and that fact is the sole cause of the accident, then the plaintiff is not entitled to recover, and the verdict will be for the defendant.''

We think this instruction is not open to charge of unduly dwelling upon certain facts to the exclusion of others. It refers the jury to the evidence to find the substantive facts upon which the defense is predicated. How it could have been more concisely drawn we are at a loss to know; surely there can not be a difference of opinion among reasonable men that if such facts were found the conclusion of negligence on the part of plaintiff inevitably followed. If these facts were found then plaintiff's injuries are due solely to his own reckless conduct, and he ought not to recover.

Upon the whole the verdict appears to be for the right party and the judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.