MOELLER, by his next friend, Appellant, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Respondent.

St. Louis Court of Appeals, June 30, 1908.

(Opinion by BLAND, P. J.)

1. **CARRIERS OF PASSENGERS: Negligence: Safe Place to Alight.** Whether or not a street railway company was negligent in failing to maintain a guardrail across the end of an elevated platform on which passengers alighted, where there was no evidence tending to show that passengers ever alighted there at night or that the platform was ever crowded in the daytime, was a question for the jury.

2. ———: ———: **Passenger Alighting.** Where a passenger on a street car, a boy twelve years of age, told the conductor that he desired to stop at a certain point in the suburbs, while the car was yet two miles distant, and the car slowed up at the point designated, but started suddenly before the passenger had time to alight, thereby injuring him, while the conductor was absorbed in a newspaper, paying no further attention to the passenger, whether or not the street railway company was negligent in thus suddenly starting was properly submitted to the jury.

3. ———: ———: ———: **Pleading.** In an action for such injuries where the petition alleged that the defendant negligently, carelessly and recklessly caused and suffered the speed of the car to be suddenly and greatly accelerated, and caused the same to start forward with a jerk, whereby the plaintiff was thrown upon the platform by reason of the defendant's negligence in the manner of maintaining its platform, such allegation was broad enough to embrace every negligent act on the part of the conductor in respect to stopping and starting the car.

4. ———: ———: ———: **Contributory Negligence: Minor.** A minor would not necessarily be guilty of contributory negligence, where he was injured by the negligence of another, although under the same circumstances an adult would be guilty of contributory negligence as a matter of law; a minor should

Moeller v. United Railways Co.

only be held to the exercise of that degree of care which would be expected of one of his age, experience and capacity, and whether he was negligent is a question for the jury unless the only conclusion that can reasonably be drawn from the evidence is that he was guilty of contributory negligence.

5. ———: ———: ———: ———. A boy twelve years of age in going to school, riding on a street car, notified the conductor of the place he desired to stop long before the car reached there, and the car slowed down at that point where it was necessary to alight upon an elevated platform. The boy stepped from the car while it was in motion within three feet of the far end of the platform and the motion of the car was suddenly accelerated just as he stepped from the car, precipitating him over the end of the platform. The boy had had no experience in riding on cars except four or five trips he had made on the same line. He had seen brakemen get off running cars. *Held*, the boy under the circumstances could not be said to have such knowledge of the laws of motion and such experience as would make him guilty of contributory negligence as a matter of law.

**(Dissenting Opinion by Nortoni, J.)**

6. ———: ———: ———. A passenger, a boy twelve years of age, notified the conductor two miles before he reached his stopping place and the car slowed down at that point; when the boy started to alight from the rear of the car upon an elevated platform three feet from the end of the platform he was precipitated to the ground off the end of the platform. At the time the passenger started to alight, four-fifths of the body of the car had passed beyond the end of the platform where the trestle work was forty-two feet above the ground. If it appeared that the conductor and the company's servant did not know that the boy was attempting to alight, it was not guilty of negligence in suddenly accelerating the speed of the car after the boy was attempting to alight.

7. ———: ———: ———: Contributory Negligence. The passenger in such case, a boy of twelve years, possessed of average intelligence, active and alert, had got on and off cars at that point four or five times before and knew the place, yet attempted to step off a moving car within three feet of the brink of the unprotected platform forty-two feet above the ground. The danger was so obvious to a reasonably intelligent boy of that age, that he was guilty of contributory negligence as a matter of law, such that he would not be entitled to damages for the injuries received.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

REVERSED AND REMANDED AND CERTIFIED TO SUPREME COURT.

*Wm. R. Gentry* for appellant.

*T. E. Francis* for respondent; *Boyle & Priest* and *Edward T. Miller* of counsel.

BLAND, P. J.—Defendant maintains and operates a double-track electric railroad, running from the western limits of the city of St. Louis west to Creve Coeur Lake, in St. Louis county.    Its road crosses the Colorado steam railroad track on a wooden trestle, about three miles east of Creve Coeur Lake; west of, and running to the trestle, is a fill or embankment about forty-two feet deep; on top of this embankment, and reaching to the east end of it, are platforms about forty-eight feet long and six feet four inches wide, maintained for the accommodation of passengers to get on and off defendant's cars.    The platform on the south side of the railroad was constructed by laying heavy timbers and filling in cinders between them.    The south side of the platform is protected by a railing, and the west end by a bent or brace, running from the railing down to the timbers, but there is no railing or other guard on the east end.    This platform is called in the evidence, "the Colorado crossing," and is a regular place to receive and discharge passengers.    Plaintiff, at the time he was injured, was twelve years of age, and lived with his parents on a farm near Creve Coeur Lake.    On December 19, 1905, he took passage on one of defendant's cars to be carried to the Colorado crossing, on his way to a school, of which he was a pupil, one-fourth mile from the crossing.    When the crossing was reached, he undertook to get off the car on to the south platform, and by the motion of the car was precipitated over the east end of the fill or embankment and injured.    The action is to recover for the injury.

The specific acts of negligence charged in the petition are, first, that defendant negligently failed to place a guard or rail at the east end of the platform; and second, that it negligently started the car forward with a quick jerk as plaintiff was alighting, causing him to be thrown over the dump. The answer is a general denial and a plea of contributory negligence.

At the close of plaintiff's case he was forced by the ruling of the trial court to take a nonsuit. His motion to set aside the involuntary nonsuit was denied and he appealed to this court.

Plaintiff testified that in December, 1905, and prior to the nineteenth of that month, he had ridden on defendant's cars from Creve Couer Lake and got off at the Colorado crossing four or five times, and knew the east end of the platform was not guarded. He testified he had watched brakemen get on and off moving cars and knew the position they took on the car to get off. He stated that when he got on the car he paid the conductor his fare and seated himself on the back seat of the car; that when the car was within about two miles of the Colorado crossing, he spoke to the conductor and told him to let him off at the crossing; that the conductor said, "All right, I will," that the conductor was sitting in the second seat ahead of him when the car was near the crossing, reading a newspaper; that when the car was within about half a block of the crossing, he (plaintiff) left his seat, went out on the back platform and took a position on the steps with his face toward the car, holding on with both hands—the position he had seen brakemen take to alight from moving cars; that the car slowed up as it neared the platform but was running too fast for him to get off when it reached the platform, and he "waited for it to slow up some more before getting off;" that it did slow up some and when it got within about three feet of the end of the platform it was running a little faster than a walk, and he

then attempted to alight; that just as his right foot touched the platform, his left being still on the step, the speed of the car was accelerated, causing him to be thrown around and to stumble against the timber at the outer edge of the platform and to turn a somersault over the end of the embankment, falling on his stomach. He became very sick in a short time, vomited blood and was seriously ill for several days. He has, however, entirely recovered.

1. In view of the fact that there is no evidence showing or tending to show, that passengers got on or off defendant's cars at the Colorado crossing in the nighttime, or that the platform ever became crowded with passengers in the day time, I do not think a court would be justified in holding that the failure of the company to maintain a guardrail at the east end of the platform, to protect people from falling down the embankment, was negligence *per se*. But if a guardrail can be maintained at that point without interfering with cars running upon the tracks, then I think it should be left to the jury, under appropriate instructions, to find whether or not the company was negligent in failing to erect and maintain a guardrail at the east end of the platform.

2. Does plaintiff's evidence tend to prove defendant's servants in charge of the car were guilty of negligence, in accelerating its speed in the circumstances testified to by plaintiff? Plaintiff did not ring the enunciator bell. In fact there is no evidence showing that he knew the car was equipped with enunciators; on the contrary, from the fact that he verbally requested the conductor to let him off at the Colorado crossing, the inference is that he did not know the car was equipped with such appliances. The conductor did not give the motorman a bell to stop the car at the Colorado crossing. He was sitting with his back to plaintiff when the latter left the car and took his posi-

tion on the rear step preparatory to alighting, and there is no evidence that the conductor actually knew plaintiff was attempting to leave the car.    From these facts in evidence, it is argued by defendant's counsel that it was not negligence to accelerate the speed of the car as plaintiff was getting off.    This argument leaves out of view the evidence that plaintiff had orally announced to the conductor that his destination was the Colorado crossing, and that the conductor told him he would let him off there.    Plaintiff had a right to rely on this promise and was not bound to ring the bell to give notice of his wish to leave the car at the crossing.    The notice had been given and accepted by the conductor as sufficient before the crossing was reached and it was his duty, without further notice, to give the motorman a bell to stop the car; not only was it his duty to do this, but also to pay attention to plaintiff while he was alighting from the car.    Had he attended to these duties, plaintiff would not have been injured.    Instead of attending to his duties, the conductor allowed himself to become absorbed in a newspaper and seems to have forgotten he had a boy passenger, whom he had promised to stop the car at the crossing; and as the car and its movements were under the control of the conductor, I think the company should be charged with negligence in accelerating the speed of the car as plaintiff was alighting from it.    But it is contended that no such negligence as this is charged in the petition.    The petition charges that after plaintiff entered the car and paid the conductor his fare, he told the conductor of his intention to leave the car at the platform "and asked the conductor to have the car stopped to allow him to alight at that point; that as the car approached said trestle work and platform it slowed down as in response to plaintiff's request, and as if for the purpose of allowing plaintiff to alight upon said platform; that as it so slowed down the plaintiff left his seat, went to

the rear platform and down upon the lower step of said car, and when the car had so slowed down at said place when it was opposite to said platform, and while it was moving slowly, the plaintiff attempted to alight from said car upon said platform, but this plaintiff says that while he was so in the act of alighting from said car, the defendant, through its agents and servants in charge of said car, negligently, carelessly and recklessly caused and suffered the speed of said car to be suddenly and greatly accelerated and caused the same to start forward with a jerk, whereby plaintiff was thrown with great force and violence upon said platform, lost his balance and was by reason of defendant's negligence in maintaining its platform in the negligent manner above set forth, caused to fall down said embankment upon the ground." This allegation of negligence is broad enough to embrace every negligent act or omission of duty on the part of the conductor in respect to stopping and starting the car, and it was not essential, as defendant's learned counsel seems to contend, that plaintiff should have set forth in his petition the evidence upon which he relied to prove the negligence charged therein, which he must have done to make a specific charge of each and every act and omission of duty of the conductor causing plaintiff's injury. The gist of this assignment of negligence is that on plaintiff's request the conductor promised to let plaintiff off at the Colorado crossing; that the speed of the car was checked as it approached the crossing, thereby inducing plaintiff to believe the conductor was about to comply with his request and have the car stopped, and in this belief plaintiff prepared to alight but as he was in the act of alighting the car was started at an accelerated speed, causing the injury. The car was under the conductor's control and it is not out of place or stating the law too strong to say that it was his duty to see that plaintiff was offered an opportunity to alight from the car in

safety and any neglect of this duty was negligence for which the defendant is liable.

3. Does the evidence conclusively show plaintiff was guilty of such contributory negligence as to bar a recovery? If the suit was by an adult, I would not hesitate to answer this question in the affirmative, but plaintiff being a minor, the law does not hold him to the same degree of care as it does persons of mature age. This doctrine of the law is well stated by JOHNSON, J., writing the opinion for the court, in Mann v. Railway, 123 Mo. App. 1. c. 491, as follows: "The conduct of a boy twelve years old should not be measured by the standard of care applied to an adult because the immaturity of youth ordinarily embraces not only an imperfect knowledge of natural facts and laws and of the proper relation between cause and effect, but when possessed of those elements necessary to the exercise of reasonable care it still lacks the discretion, thoughtfulness and judgment presumed to be an attribute of the ordinarily prudent adult and which may be said to come only with experience. Thoughtlessness, impulsiveness and indifference to all but patent and imminent dangers are natural traits of childhood and must be taken into account when we come to classify the conduct of a child. [Anderson v. Railroad, 161 Mo. 411, 61 S. W. 874; Burger v. Railroad, 112 Mo. 238, 20 S. W. 439.]"

Plaintiff being a minor should only be held to the exercise of that degree of care which would be expected of one of his age, experience and capacity, and the question of whether or not he was guilty of contributory negligence was for the jury, unless the only conclusion that can reasonably be drawn from the evidence is that he was guilty of contributory negligence. [Anderson v. Railroad, 161 Mo. 411; Campbell v. Railroad, 175 Mo. 161, 75 S. W. 86; Heinzle v. Railroad, 182 Mo. 528, 81 S. W. 848; Anderson v. Railroad, 81 Mo. App. 116; Fry v. Transit Co., 111 Mo. App. 1. c. 333, 85 S. W. 960;

Edwards v. Railroad, 112 Mo. App. l. c. 659, 87 S. W. 587; Butler v. Railroad, 117 Mo. App. 360, 93 S. W. 877.]

Defendant cites the cases of Graney v. Railroad, 157 Mo. 666, 57 S. W. 276; Spillane v. Railroad, 135 Mo. 414, 37 S. W. 198; Payne v. Railroad, 136 Mo. 562, 38 S. W. 308, and Walker v. Railroad, 193 Mo. 453, 92 S. W. 83, as sustaining its contention of contributory negligence. In the Graney case, James, the plaintiff's son, was drawn or sucked under a rapidly moving train and killed. At page 679, the court said: "His comrades who were there present with him before the train arrived at the crossing, when the train was seen approaching, all say that it was running very rapidly. He was in a position to see the train, and it will be presumed in view of the surrounding facts as testified to by the witnesses present, that he did see the train. If he did, then his age, nearly twelve years, his brightness and intelligence, his familiarity with the operation of trains and the dangers incident thereto, must, under the decisions of this court, place him on the same plane as if sui juris." The facts do not fit the facts in this case, for there is no evidence that plaintiff was sufficiently familiar with the operation of street cars, or of the laws of motion, to appreciate the danger of getting off a moving car. What is decided in the Spillane case is that the law will require a boy nine years of age to exercise care commensurate with the intelligence, capacity and experience he is shown to possess.

In the Payne case, a negro boy eleven years old was struck and injured by a train at a road crossing in Higginsville, Missouri. All the warnings available were given as the train approached the crossing and there was no evidence of negligence on the part of the trainmen. At page 585, the court said: "The testimony of plaintiff and of his mother abundantly establish that his judgment and discretion, his ability to take

care of himself, were adequate to that task; indeed were equal to the judgment and discretion of the average man of mature years. This being the case, it is difficult to see why the same rule as to contributory negligence should not apply to a boy equal in capacity and intelligence to the average man as to the danger to be apprehended and guarded against in crossing a railroad track, as should apply to such man."

In the Walker case, the deceased, a boy fourteen years old, for several years preceding the accident, had hauled timber to coal mines near the railroad crossing. When he and his step-brother, two years younger, had unloaded the wagon and were ready to start home, plaintiff warned them that the regular passenger train was about due. They stopped about fifty feet from the crossing, looked and listened for the train, but neither saw nor heard it, and then proceeded slowly up the slightly-inclined grade to the track, looking in the opposite direction at some boys carrying fish, but at no time thereafter looking or listening for the train, which was coming at a very rapid rate, and did not discover it until it was too late for them to get across to safety. There was evidence that the whistle was not sounded within eighty rods of the crossing and that the bell was not kept ringing, and failure in that regard is the negligence relied upon by plaintiff. Deceased and his step-brother were not discovered by the engineer or fireman until it was too late to stop the train in time to avoid striking the wagon. *"Held,* that, the case having been submitted to the jury on instructions asked by both sides that deceased was *sui juris,* it will be considered in this court on the same theory, and a verdict and judgment for plaintiff must be reversed, on account of concurring negligence. Semble, under the facts of this case, decedent was guilty of contributory negligence as a matter of law."

None of these cases militate in the least against

what I have quoted from the Mann case and are not authority for the contention that plaintiff should, on his own evidence, be held guilty of contributory negligence as a matter of law.   Plaintiff is a farmer boy and the only experience he had had in riding on cars, previous to his injury, so far as the evidence shows, was the four or five trips he had made on defendant's line from Creve Coeur Lake to the Colorado crossing.  He had seen brakemen get off running cars, but there is no evidence that he had ever alighted from a moving car or train of cars prior to the day of his injury. From his examination, we judge him to be a boy of average intelligence for one of his age, but his knowledge of the effect of physical forces that operate against one in getting off a moving car was doubtless very meager. He had a pupil's anxiety to reach the schoolhouse by the time school opened, and probably thought if he was carried beyond the crossing, he would be tardy, and the fact that the car slowed up as it approached the crossing probably led him to believe it would stop, as the conductor told him it would, to let him off.   He waited for the car to stop as long as he could, to alight on the platform.   In these circumstances, I do not think one of his age and lack of experience should be held, as a matter of law, to have had sufficient judgment and discretion to discern the risk he incurred by getting off the car traveling at the speed he described, and that he should not have been nonsuited. It seems to me the question whether or no he was guilty of contributory negligence was one for the jury to pass on.   Wherefore, the judgment is reversed and the cause remanded.   *Goode, J.,* concurs.   *Nortoni, J.,* dissents and requests that the case be certified.

### DISSENTING OPINION.

NORTONI, J.—I am unable to accept the views of my associates in this case and therefore decline to concur in the opinion of the court.  The case presents itself

to my mind, first, as one in which the plaintiff was culpably negligent, and second, I am not convinced that the record disclosed plaintiff's injury to be attributable to the negligence of defendant. In truth, it seems to me as though his injury is solely the result of his own careless conduct in stepping off of a moving car on the very brink of a precipice forty-two feet in height. The evidence shows the plaintiff to be a boy twelve years of age. He was possessed of average intelligence. His testimony discloses him to be bright and alert. He said he was reared in the vicinity of Creve Coeur Lake, which is situated about sixteen miles west of the city of St. Louis, and had attended school for several months prior to his injury at a schoolhouse located about one-fourth of a mile from the place where he was precipitated over the precipice, by jumping off of a moving car. He testified that he had often seen persons getting on and off moving street cars in the city of St. Louis; that he had also observed brakemen getting off and on moving trains. Having been reared in this locality, which is permeated with electric railroads, it goes without saying that he was entirely familiar with the operation of cars of the kind in question and the necessary dangers incident thereto. As to the place where he was injured; that is, where he fell over the precipice down onto the Colorado Railroad right of way; he was familiar with this too. This was a point where the Creve Coeur Lake electric line, running east and west, by means of a trestle, crosses the Colorado steam railroad, which runs north and south. Plaintiff testified he had attended a school at a schoolhouse one-fourth of a mile south of this crossing for three months before his injury. At another place in his examination it appears he had attended school there for several months altogether. He testified he had gotten on and off the cars at this identical passenger platform four or five times recently prior to the day he was injured. It is certain, therefore, that he

knew the situation and its surroundings. It appears in the evidence the platform erected by the defendant company for the purpose of receiving and discharging passengers was about six feet four inches in width, and extended along the south side of its tracks immediately adjacent to its trestle over the Colorado railroad for some considerable distance. One witness stated this platform was twenty-six feet and another, that it was forty-eight feet in length. Probably the latter is correct. Defendant's car line at this point is situated on top of a high embankment at an elevation of forty-two feet above the Colorado railroad tracks, which are on the surface. By attention to the evidence and certain photographs introduced and on file in the case, it appears that the defendant's tracks crossed over and above the Colorado tracks by means of a trestle work forty-two feet above the tracks of the Colorado railroad. Defendant's platform for the reception and discharge of passengers there, abutted this trestle work, and the east end of the platform was the immediate top of the precipice. Plaintiff having boarded the car at Creve Coeur Lake, some three miles west of the Colorado crossing, requested the conductor to stop the car at that point and permit him to alight. The conductor said he would do so, and thereafter took a seat in the car and became engaged in reading a newspaper. There seems to have been no other passengers on the car. When the car came within a short distance of the Colorado crossing, plaintiff saw the conductor seated reading the paper, and without further calling his attention to his desire to alight, went out upon the back platform and stood upon the step. At this time the car was about one-half a block west of the platform and was moving toward St. Louis, so plaintiff says, "pretty swift." At the time it reached the west end of the platform, it was maintaining a rate of speed at which the plaintiff did not care to venture to alight. It appears the car continued going eastward faster than

a man's walk, or equivalent to a slow run, until the rear steps thereof on which plaintiff stood, was within three feet of the east end of the platform; or in other words, within three feet of the brink of the precipice, then the plaintiff alighted therefrom, at which time, while he was in the act of alighting, the speed was accelerated again, causing his stumble and consequent somersault over the brink of the precipice to the Colorado right of way below.

Now, first, with respect to defendant's negligence. It may be stated as a proposition of law generally true that the courts will not declare a person guilty of negligence as a matter of law in alighting from a slowly moving street car on a level street, or where the surroundings are reasonably safe and secure for the purpose. This doctrine obtains with respect to cases where the car is approaching a usual stopping place and slowing down as though it were going to make a stop, for such amounts to an invitation to the passenger to prepare to alight, and at the same time, operates as an assurance that the speed will not be accelerated, at least, until the stopping place is reached. [Dawson v. Transit Company, 102 Mo. App. 277, 76 S. W. 689.] The evidence in this record presents no such case, however, for here, instead of the speed of the car being accelerated after the car slowed down and while approaching the stopping place, the acceleration of speed occurred when the car was actually leaving it. By attending to the facts and situation disclosed, it appears at the time plaintiff stepped off the rear platform of the car, that at least four-fifths of the body of the car had then passed to and was actually upon the trestle work, forty-two feet above the Colorado railroad tracks. Now, a boy twelve years of age, and every other person of average intelligence, knows full well that street cars do not stop on trestles forty-two feet above the earth and discharge passengers. It appears, therefore, the plaintiff knew that instead of

133 App—6

the car approaching the stopping place at the time its speed was accelerated, it was actually going forward therefrom, and it is undoubtedly the law that negligence cannot be attributed to the defendant for accelerating the speed of its car when leaving a stopping place unless its servants in charge of the car actually knew the passenger was then about to alight. There is no evidence whatever in this case that either the conductor or motorman knew the plaintiff was about to alight at that time. [Armstrong v. Railway, 55 N. Y. Supp. 498; Outen v. Railway, 94 Ga. 662.]

It is true the conductor was reading a newspaper and had evidently forgotten the plaintiff's request, made two miles back, to stop the car. This was no doubt carelessness on his part. However that may be, it is not one of the acts of negligence alleged in the petition and relied upon for recovery, although it is mentioned therein as a matter of inducement. That such is not relied upon as a ground of recovery is manifest from the petition. (See also page seven of the brief of counsel for plaintiff, which discloses that no such ground is contended for by the argument here.) Be this as it may, the proposition to the effect that defendant was not negligent in accelerating the speed of the car upon leaving the stopping place, unless its servants knew the plaintiff was engaged in the act of alighting, is entirely sound. Of course this doctrine would not obtain with equal force had the plaintiff stepped off the car while it was slowly approaching the stopping place.

To recur to plaintiff's contributory negligence. The evidence is that although entirely familiar with the situation, having gone to school for several months within one-fourth of a mile therefrom, having gotten on and off the cars four or five times at the identical place in question, and being possessed with full knowledge of the precipice, forty-two feet in height, the plaintiff, a boy of twelve years, possessed of average intelligence, ac-

tive and alert, stepped off of a moving car within three feet of the end of the platform, and was thereby hurled over the brink of the precipice and injured. It is indeed true the law makes allowance for the thoughtlessness of youth. It does not hold him necessarily irresponsible, however. In a case in which the conduct of a boy only nine years of age was involved, our Supreme Court said: "To the extent that a child has knowledge and understanding of danger, *or where it is of such a nature as to be obvious to even one of his years, he is in legal duty to avoid it."* [Ridenhour v. K. C. Cable Co., 102 Mo. 270, 287, 13 S. W. 889, 14 S. W. 760.] This language was quoted approvingly and italicized by Judge GANTT in Spillane v. Mo. Pac. Ry. Co., 135 Mo. 414, 425, 37 S. W. 198.

In the Spillane case, a boy nine years and four months of age was injured while drawing a small piece of ice across a railroad track with a twine string. One end of the string was tied around his wrist and the other end around the ice. The boy was on one side of the track and the ice on the other. A passing locomotive became entangled in the string, jerked the boy against it, and occasioned his injury. The question arose as to whether or not it was the duty of a boy of that age to look and listen, as is the duty of an adult person when going about the tracks. The argument advanced was that his duty in this respect should be ascertained solely with reference to the standard of care exercised by a boy of like intelligence, experience and capacity. It appearing from the evidence that the boy was familiar with the railroad and the operation of trains, having been about there frequently and quite intelligent, the court adjudged the same rule should be applied to him with respect to such obvious dangers as would apply to one *sui juris.* To compare the facts in judgment in the Spillane case to the facts in judgment in the present case, touching the matter of obvious dangers; it seems

the act of stepping off of a car moving faster than a man's walk, on the very brink of a high precipice, is fraught with dangers equal and as obvious as the act of being on one side of a railroad track, with one end of a piece of twine tied to one's wrist and the other end made fast to a small piece of ice, while a locomotive is passing over the track. One would naturally expect the twine to break or be cut in twain by the locomotive wheels before entailing injury; whereas even a boy of twelve knows the momentum incident to moving bodies. The rides, the runs, the jumps of daily life are a constant school of experience in this behalf.

In Payne v. C. & A. Ry. Co., 136 Mo. 562, 585, 586, 38 S. W. 308, our Supreme Court held that a bright, intelligent negro boy, possessed of a good mind, sight and hearing, who attempted to cross the track in front of an approaching train, was guilty of negligence as a matter of law, and predicated the doctrine upon the proposition that with respect to such obvious dangers, such an infant should be held "to the same responsibility as is possessed by and recognized in an adult."

The same doctrine is vigorously asserted in Graney v. Railway, 157 Mo. 666, 679. In the Graney case, a small boy, familiar with railroads, etc., standing within three feet of a passing freight train, was thrown down and under the wheels by means of the current of air incident thereto. To compare the case in judgment with the Graney case; it seems the act of stepping off a moving car within three feet of the brink of a precipice, inheres with dangers much more obvious to either boy or man than the most usual and daily occurrence of standing within three feet of a passing train. The doctrine of those cases has been recently reviewed and approved by the court of last resort in Walker v. Railroad, 193 Mo. 453, 481, 482. Although the learned judge giving the opinion in that case reluctantly subscribed to the doctrine, he recognized it as authority and stated it to be

the law of this State. And it may be said that the principal case relied upon and quoted from by Judge BLAND in the majority opinion of the court in the case now under advisement, declares a boy, twelve years of age, who was injured while asleep on the depot platform near the track, to be guilty of negligence as a matter of law. His recovery was permitted in that instance only upon the doctrine of the last clear chance, it appearing that his injury could have been averted by the exercise of ordinary care on the part of the locomotive engineer. [Mann v. Railroad Co., 123 Mo. App. 486, 492.]

Plaintiff in this case was entirely familiar with the situation. He admits in his testimony that he knew the precipice was there, etc., etc., yet he stepped off from a moving car within three feet of the brink. Under such circumstances, it seems to me the danger was as obvious to a reasonably intelligent boy of twelve years as it would have been to the average adult. If the cases above cited are the law of this state, then the plaintiff's conduct with respect to the obvious danger which confronted him, must be ascertained with respect to the rule applicable to those persons who are *sui juris*.

Entertaining this view, I respectfully dissent from the opinion of the court.

I deem the judgment of the court in this case to be in direct conflict with the cases of Spillane v. Railroad, 135 Mo. 414; Payne v. Railroad, 136 Mo. 516; Graney v. Railroad, 157 Mo. 666; Walker v. Railroad, 193 Mo. 453, and other cases asserting the same doctrine hereinbefore cited, and respectfully ask that the case be certified to the Supreme Court for final determination.